# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2950

MARY JOHNSON,

*Plaintiff-Appellant,*

*v.*

JOHN DOSSEY, HANOVER PARK POLICE DEPARTMENT,
RONALD MOSER, VILLAGE OF HANOVER PARK,
KEVIN LAUDE, DUPAGE COUNTY STATE'S ATTORNEY,
JOSEPH BIRKETT, COUNTY OF DUPAGE, DENNIS ROGERS,
DUPAGE COUNTY FIRE INVESTIGATION TASK FORCE,
DUPAGE COUNTY SHERIFF'S OFFICE, JOHN ZARUBA,
JOHN RAYBURN, DROPKA & RAYBURN FIRE INVESTIGATION,
INC., KEVIN MCMAHON, and THE ALLSTATE CORPORATION
a/k/a ALLSTATE INSURANCE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 787—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED DECEMBER 3, 2007—DECIDED FEBRUARY 12, 2008

Before BAUER, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* In March 2002, the house Mary
Johnson was leasing in Hanover Park, Illinois, sustained
severe fire damage. Johnson submitted a claim for her
losses to her insurer, The Allstate Insurance Company.

Rather than having her claim paid, however, Johnson was arrested five months later and charged with arson. She was in jail for about a month before she posted bail. In January 2004, she was tried and convicted. She was sentenced to 9 1/2 years in prison, where she remained from January 23, 2004, through February 10, 2005, when her court-appointed counsel discovered a previously undisclosed exculpatory report of the DuPage County Fire Investigation Task Force. Based on the report, she filed a motion for a new trial, a request which was granted. She was released from custody, and in September 2005, following a new trial, she was acquitted. Pursuant to 42 U.S.C. § 1983, Johnson sued a number of defendants—including Hanover Park and its police department, the DuPage County state's attorney, the DuPage County Fire Investigation Task Force, Dropka & Rayburn Fire Investigation, Inc., The Allstate Insurance Company, and others. The defendants filed various motions to dismiss the case, in response to which Johnson filed a motion to amend her complaint. Ultimately, the district judge dismissed the case. He said there was probable cause to arrest Johnson and that the statute of limitations had run out on her § 1983 claim. The pendent state law claims were dismissed as well. He also denied the request to amend. Johnson appeals.

We will return to the facts in more detail after we explain why the facts to which we return must be derived from Johnson's amended complaint. As relevant here, Rule 15(a) of the Federal Rules of Civil Procedure provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." A motion to dismiss the complaint is not a responsive pleading. *Crestview Vill. Apartments v. U.S. Dep't of Hous. and Urban Dev.*, 383 F.3d 552 (7th Cir. 2004); *Duda v. Franklin Park Pub. Sch. Dist. 84*, 133 F.3d 1054 (7th Cir. 1998). When an amended complaint

is filed, the prior pleading is withdrawn and the amended pleading is controlling.

In this case, no responsive pleading has ever been filed. Johnson therefore had a right to file an amended complaint. There was no need for her to file a motion to amend her pleading, and in fact her doing so may have caused some confusion.

Confusion aside, the amended pleading should have been filed, and it controls the remainder of our discussion, which continues because, although we have said that the right to amend is "absolute," *see Peckham v. Scanlon*, 241 F.2d 761 (7th Cir. 1957), we have acknowledged one exception. A district court need not allow the filing of an amended complaint, even when no responsive pleading has been filed, if it is clear that the proposed amended complaint is deficient and would not survive a motion to dismiss. *Duda*; *Mitchell v. Collagen Corp.*, 67 F.3d 1268 (7th Cir. 1995). As we said in *Duda*,

> Rather than simply reverse the judgment and remand the case to the district court, considerations of judicial economy counsel that we scrutinize the amended complaint at this stage of the proceedings and determine its viability.

At 1057. With that principle in mind, we will look at the amended complaint to see whether filing it would be an exercise in futility.

Johnson's amended complaint sets forth claims under 42 U.S.C. § 1983 and state tort law—false imprisonment, malicious prosecution, and conspiracy. We, of course, take the facts as she alleges them. *Conley v. Gibson*, 355 U.S. 41 (1957). The defendants in the amended complaint are John Dossey, a Hanover Park police officer; Dennis Rogers, an officer with the DuPage County sheriff's department; Kevin Laude, an assistant state's attorney

for DuPage County; John Rayburn a certified fire investigator employed by defendant Dropka & Rayburn Fire Investigation, Inc., and Kevin McMahon, an insurance claims investigator who is an agent of defendant The Allstate Corporation a/k/a Allstate Insurance Company. Essentially, Johnson alleges that the defendants conspired to deny her insurance claims by prosecuting her (or having her prosecuted) for arson even though they were in possession of documents which cast significant doubt on any contention that the fire which destroyed the home was caused by arson.

Right after the fire, on March 26, 2002, Johnson was interviewed by Officers Dossey and Rogers, and the same day she made a claim for loss to her insurer, Allstate. A few days later, Rogers discussed the investigation with McMahon, Allstate's claims adjuster. Then McMahon and Rayburn, on behalf of Allstate, inspected the property but did not take any evidence from the scene. Also, McMahon interviewed Johnson regarding her claim. On April 5, the DuPage County Fire Investigation Task Force issued its report indicating that the cause and origin of the fire were undetermined and that, after a thorough search, no flammable or combustible accelerants which could have triggered the fire were found. Dossey, Rogers, Laude, McMahon, and Rayburn met and made a joint decision to disregard the findings of the task force. At this point, Rayburn returned to the scene of the fire and collected samples, which were submitted to Great Lakes Analytical, Inc. for analysis. The report was provided to the other defendants.

Allstate denied Johnson's claim and, in turn, her attorney sent a letter to Allstate raising issues of bad faith. Meanwhile, McMahon was in communication with law enforcement personnel regarding the investigation. The results of both the law enforcement investigation and Allstate's investigation remained inconclusive. Neverthe-

less, Johnson was arrested and charged with arson on August 13, 2002, even though there was no probable cause to believe that a crime had been committed. She accuses Dossey of lying to the grand jury when he knowingly testified falsely that the lab analysis showed that charcoal lighter fluid was used to start the fire. She says the criminal prosecution of her was instigated by Allstate, who wanted to deny her claim for damages under its insurance policy.

Because federal jurisdiction is dependent on the § 1983 claims, we will look at them first. The essence of the claims is that withholding the task force report was a violation of Johnson's due process rights, as set out long ago in *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* held that the suppression of evidence favorable to the accused violates due process where the evidence is material either to guilt or to punishment. Clearly the amended complaint sufficiently alleges a *Brady* violation. Running through the briefing in this case, though, is the argument, relied on by the district court in dismissing the original complaint, that Johnson's claims are barred by the 2-year Illinois statute of limitations set out in 735 Ill. Comp. Stat. 5/13-202. That is the applicable statute of limitation, but defendants misapprehend the appropriate accrual date for Johnson's cause of action.

The defendants base their statute of limitations argument on *Wallace v. Kato*, 127 S. Ct. 1091 (2007). That case, however, deals with the accrual date of a § 1983 claim for false imprisonment which, the court said, was the date on which the defendant appeared before a magistrate and was bound over for trial. A *Brady* claim, on the other hand, is not controlled by *Wallace* but rather by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* involved a claim of malicious prosecution which, if the plaintiff prevailed, would render the criminal conviction invalid. The Court differentiated between actions under § 1983 and those

for habeas corpus and determined that a civil tort action was not the proper vehicle for challenging the validity of criminal judgments:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

At 486-87 (footnote omitted).

It follows, then, that the claim based on a *Brady* violation did not accrue until Johnson was acquitted on September 2, 2005. Her complaint here was timely filed on February 10, 2006.

Various defendants present separate issues. The private defendants can be subject to a § 1983 action only if they conspired with the state actors to violate Johnson's civil rights. The conspiracy allegations are clearly sufficient against McMahon and Rayburn.

The corporate defendants require a bit more attention. Both claim to be sued solely under a theory of respondeat superior or vicarious liability. Like public municipal corporations, they cannot be sued solely on that basis: a "private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *see also Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760 (7th Cir. 2002). However, like a municipality, a private corporation can be liable if the injury alleged is the result of a policy or practice, or liability can be "demon-

strated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned . . . the misconduct of subordinate officers.'" *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004). As to municipalities, we have said that "the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007), quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). A policy may be found if the constitutional injury was caused "by a person with final policymaking authority." *Sims*, at 515.

The allegations against Allstate are that, after Johnson raised issues of bad faith, the "criminal prosecution of . . . JOHNSON, was instigated, in part, by . . . ALLSTATE . . . ." There is also reference to the Allstate investigation of the fire. And more tellingly, there is an allegation that Allstate paid for the expert witnesses to testify at Johnson's criminal trial. These are direct allegations against the company. It cannot be said that the only allegations against Allstate are based on its vicarious liability for McMahon's actions.

It is true that there are also allegations that McMahon acted as the agent or employee of Allstate. However, this is not the familiar situation in which the only allegations against the municipality (or the company) are that its employee committed a constitutional violation for which the company is alleged to be vicariously liable. It is a vastly different allegation to say that an agent of the company committed a violation on behalf of the company than to say that the employee committed a violation about which the company may not even have known, but for which the company is vicariously liable.

Here, the allegation is that McMahon was doing Allstate's bidding, not his own. It is highly unlikely that McMahon paid the expert witness. Allstate did that. Payment of an expert witness almost by definition had to be done by someone with authority. The allegations include, in effect, that Allstate is the moving force behind the violations. There is nothing inherently futile about these claims.

Dropka & Rayburn presents a closer question, but again there are allegations that implicate the company itself. There is an allegation that the company conspired with law enforcement personnel to deny Johnson's constitutional rights. In addition, as with McMahon, Rayburn is alleged to have acted as the direct agent of the company; in other words he was the company. We cannot say the allegations are futile. Accordingly, the company can't get out of this case at this time.

Assistant state's attorney Laude claims that he has absolute immunity from suit. We find, however, that the allegations are that Laude was part of the investigaion of the fire and of a conspiracy that targeted Johnson. He may claim, as can the other investigators, a qualified, but not an absolute, immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

We turn to the pendent state law claims of malicious prosecution, false arrest, and false imprisonment. Relying on *Wallace v. Kato*, the defendants argue that the claims are time-barred. At least two things prevent us from agreeing. *Wallace* involved the accrual date for a claim of false arrest and false imprisonment, but not as to state law accrual dates. The Court specifically stated that, while the statute of limitations in § 1983 cases is derived from the analogous state law, the "accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." 127

S. Ct. at 1095. *Wallace* has no effect on Illinois law. Secondly, Ms. Johnson has specifically alleged that limitations tolling provisions in Illinois law—§ 13-215—Fraudulent Concealment, and the doctrine of equitable tolling—are relevant to her claims. The allegations are sufficient to escape a finding of futility.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings. Rule 36 shall apply on remand.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*