**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 11, 2008[*]
Decided June 12, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-2571

| | |
|---|---|
| TITUS HENDERSON,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>PETER HUIBREGTSE, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Western District of<br>Wisconsin.<br><br>No. 06-C-407-C<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Wisconsin inmate Titus Henderson attempted to subscribe to the *Boscobel Dial*, a local newspaper, but the *Dial* refused his payment, citing a corporate policy against supplying inmate subscriptions. Henderson believed that the denial of service was not an independent decision but rather the result of pressure and interference by Boscobel city

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

officials and prison officials at the Wisconsin Secure Program Facility (WSPF). So he sued the *Dial*'s publisher, numerous executives and employees, each member of the Boscobel Common Council, the City of Boscobel, a city attorney, the mayor, the state employees union, Secretary of the Wisconsin Department of Corrections Matthew Frank, and Deputy Warden Peter Huibregtse under 42 U.S.C. § 1983, complaining of various constitutional violations. The district court dismissed the bulk of Henderson's claims at screening, *see* 28 U.S.C. § 1915A, but left untouched Henderson's contentions (1) that Huibregtse and Frank deprived him of his rights under the First Amendment by preventing WSPF inmates from subscribing to the *Dial* and (2) that a City of Boscobel resolution urging the *Dial*'s publisher to refuse subscription requests from WSPF inmates also violated his rights under the First Amendment. After discovery, however, the court granted summary judgment in favor of the remaining defendants. Henderson now appeals, and we affirm.

We construe the facts, as we must, in Henderson's favor. *See, e.g., Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 470 (7th Cir. 2007). Henderson arrived at WSPF in January 2003. From 1999 to early 2003, a WSPF policy expressly prohibited inmates from subscribing to or possessing the *Dial*. That official policy evaporated in May 2003, though, after Dane County Circuit Court Judge Michael Nowakowski ordered officials to permit WSPF inmates to receive the *Dial*.

A few weeks later the Boscobel Common Council convened to discuss, among other things, the prospect of inmate subscriptions to the *Dial*. The minutes from that meeting reflect the concern among WSPF officials that inmate subscriptions might endanger prison staff or local residents:

> WSPF officials are worried that access to the Boscobel Dial will unnecessarily provide too much personal information about WSPF staff and local residents to WSPF convicts. If access to the Dial policy is allowed, residents can expect solicitations from some convicts for money or for other motives. A Dane County Judge ruled in favor of a WSPF inmate, reversing a WSPF policy that inmates would not have access to the local paper. Mr. O'Rourke stated that there are publications that have policies that prohibit sales to inmates at correctional facilities. He believes that the publications are not legally bound to honor subscriptions because of private ownership laws. He went on to say that the Boscobel Dial would not have to honor subscriptions to WSPF inmates for the same reason. The Boscobel Dial has decided that they will honor requests from WSPF inmates if so asked. David Krier, Dial Editor, stated if the Dial were to adopt the policy being discussed, they would be the only paper in the state to do so.

The meeting concluded with a proposal to draft and issue an "advisory resolution" requesting that the *Dial* deny subscriptions to WSPF inmates.  And in June 2003 the Common Council did just that.  City of Boscobel Resolution # 6-2-2003 reads:

> Therefore, Be It Resolved, that the Common Council of the City of Boscobel urges Morris Newspaper Corporation, publisher of the *Boscobel Dial*, to establish a policy that it will not sell subscriptions to the *Dial* to any inmate of the Wisconsin Secure Program Facility.

At some point after June 2003 (the record does not tell us when) the *Dial* adopted a policy to deny subscriptions to WSPF inmates, which, so far as we know, is still in force today.

In November 2005 Henderson attempted to mail a subscription request to the *Dial*, but his letter was returned to him without any response, which Henderson took to mean that prison officials never mailed the letter.  He tried again, though, and this time the *Dial* responded with a hand-written reply: "We are returning your money order—We cannot mail papers to our local prison.  Sorry."  Henderson filed a grievance complaining that prison officials had interfered with his subscription requests.  An internal investigation concluded, however, that "WSPF is not denying him access to the Boscobel Dial.  His money order was returned from the Boscobel Dial."  Henderson also received notification that "WSPF has no control over private industry decisions regarding sales to inmates."  WSPF officials ultimately dismissed the grievance, stating that "this is a consumer-vendor issue that the complainant will have to address with the newspaper directly."

Henderson then sought relief in the district court, but, as the court noted in its screening order, many of the defendants were not subject to suit under § 1983.  Some were not state actors; others enjoyed absolute immunity; and, according to the very allegations contained in the complaint, a third group lacked any personal involvement whatsoever in the alleged wrongdoing.  When the court was done with its winnowing, only three defendants remained: Huibregtse, Frank, and the City of Boscobel.

Henderson responded to the court's screening order with a motion to amend his complaint although he had not yet been served with any responsive pleading.  *See* FED. R. CIV. P. 15(a).  But his proposed amended complaint was remarkably similar to the old one, and the court suspected that Henderson was "attempting to reinstate claims and defendants against whom I have denied him leave to proceed."  For that reason, and for the sake of clarity, the court instructed Henderson to submit a revised version after "draw[ing] a line through the allegations that concern matters upon which I already have ruled fail to state a claim and circl[ing] allegations he is adding to the complaint."  Henderson never complied with that instruction.

Instead Henderson submitted four discovery requests to various WSPF employees, all non-parties, asking whether prisoners could receive the *Dial*. All four responses were "no." Henderson then demanded that defendants Frank and Huibregtse "authenticate and verify" those four documents as evidence of an ongoing WSPF policy of refusing the *Dial* to inmates. The defendants refused, and Henderson asked the court for additional time to obtain discovery. *See* FED. R. CIV. P. 56(f). The court declined:

> To the extent that plaintiff wants the court to consider documents generated by the defendants or their agents to determine if a de facto policy existed, the court will give due consideration to all of the evidence and arguments properly submitted by plaintiff. But I agree with defendants that they cannot be compelled essentially to admit to a de facto policy that they deny exists. The evidentiary record now before the court is sufficient for both parties to make their best presentations on the summary judgment motion.

In its order of summary judgment, the court concluded that the four discovery responses—Henderson's only evidence of the de facto policy that he alleged—were inadmissible hearsay because Henderson had not established whether the four responders had any personal knowledge of WSPF's mail policy. Even if the evidence was not hearsay, the court continued, "the questions and answers are too vague to be dispositive"; the responses might have reflected only that WSPF employees were aware of the *Dial*'s corporate policy to deny subscriptions to prisoners. And even if Henderson were correct about a de facto WSPF policy of refusing *Dial* subscriptions, the court emphasized, it was not the cause of his injury: the *Dial* itself was refusing to sell subscriptions to prisoners in the first place. Finally, turning to the City of Boscobel's actions, the court held that the "non-binding resolution" did not run afoul of the Constitution because it was merely advisory. The court observed that the resolution "simply 'urges' a private entity to take action" and there was no evidence that it was coercive.

Henderson's first argument on appeal is that the district court abused its discretion, *see Dewitt v. Proctor Hosp.*, 517 F.3d 944, 949 (7th Cir. 2008), by denying his motion to file an amended complaint. Henderson now recognizes, as do his opponents, that no motion was required. Rule 15(a) permits a plaintiff to amend his complaint once, "as a matter of course," so long as no responsive pleading has been served. FED. R. CIV. P. 15(a)(1). This near-absolute right is not without exception, though. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 n.4 (7th Cir. 1998). A district court can still deny an amended complaint filed as a matter of course if it fails to remedy deficiencies contained in the original pleading and is therefore vulnerable to a motion to dismiss. *See Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008); *Duda*, 133 F.3d at 1057 n.4. Viewed through this lens, we cannot agree that the district court abused its discretion. Henderson describes the

court's action as an "out-right" denial of his amended complaint "without reason." But the court explained in detail its reasons for refusing the amended complaint *as drafted*—and provided Henderson with instructions on how to submit a new amended complaint shorn of futile claims. *See Dossey*, 515 F.3d at 780.

Henderson's next argument is that summary judgment was premature because the defendants had not yet authenticated his four discovery responses. We review a denial of a continuance under Rule 56(f) for abuse of discretion. *Hammer v. Ashcroft*, 512 F.3d 961, 971 (7th Cir. 2008). Henderson does not tell us what he would have done with a continuance. After all, the defendants had already notified him that they did not know "whether the document in question is a true and correct copy, or if the alleged original was issued and signed by the person indicated in the interrogatory." Furthermore, the district court accepted that the documents were genuine before deeming them inadmissible on hearsay and vagueness grounds. To the extent that Henderson feels that he was entitled to an admission of a de facto policy based on these documents, he offers us no supporting authority. And, in any case, we cannot agree given the record before us that ten months was not enough time to conduct discovery.

Henderson's final argument is that the district court erred in granting summary judgment to the defendants because the City of Boscobel resolution violates the First Amendment. For that to be true, the resolution would have to have some coercive effect on the *Dial*, which Henderson insists is the case. *See, e.g.*, *Lowery v. Euverard*, 497 F.3d 584, 599 (6th Cir. 2008) ("The First Amendment prevents the state from using its coercive power to prevent people from expressing their opinions."). Henderson contends that Resolution # 6-2-2003 is an "ordinance" that "compel[s]" Morris Newspaper Corporation to put a stop to inmate subscriptions. But a plain reading of the resolution extinguishes this argument. The resolution merely "urges" a private actor to enact a policy. Compulsion is noticeably absent. *Cf. Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1414-15 (9th Cir. 1996) (holding that a city resolution urging citizen support for a local newspaper boycott was neither regulatory nor coercive but rather "a declaration of principle, rather than an exercise of governmental powers"); *Zilich v. Longo*, 34 F.3d 359, 363-64 (6th Cir. 1994) (holding that a city resolution "expressing . . . disapproval and outrage" at former city councilman for violating residency requirement did not violate the First Amendment because resolution was merely hortatory and did not have the effect of a law). The resolution, therefore, is akin to government speech, which is permissible so long as it does not prevent other speech. *See, e.g.*, *Warner Cable Commc'ns, Inc. v. City of Niceville*, 911 F.2d 634, 638 (11th Cir. 1990).

Henderson's constitutional challenge fails for another, simpler reason as well: the newspaper does not want to sell him a subscription. He assumes that the City's resolution—and not an independent business decision—prevents the *Dial* from sending him

newspapers, thus invading his constitutional right to receive information. Without question, the First Amendment protects Henderson's right to listen as well as the *Dial's* right to speak. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976); *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007); *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165-67 (3d Cir. 2007). "A precondition of the right to receive, however, is the existence of a 'willing speaker.'" *Shepard*, 507 F.3d at 549 (quoting *Va. State Bd. of Pharmacy*, 425 U.S. at 756). Accordingly, Henderson must offer evidence that but for the challenged regulation, the *Dial* would have spoken. *See Shepard*, 507 F.3d at 549-50; *Black*, 489 F.3d at 165-67. Unfortunately for Henderson, the record shows that the Dial was not inclined to sell him a subscription. Indeed, in 2003—before the resolution—the *Dial* published a letter to its readers articulating its own opposition to inmate subscriptions:

> We do not condone, we have not solicited, and we will not support the sale of the Dial to inmates at the correctional facility. Our focus is to provide news of the community to people in our readership area and our primary concern is for the people we serve.
>
> We have not had any subscription requests to date from Supermax inmates and we hope we never do. However, if that happens, we may not legally have any choice. If we deny access after a judge has ruled otherwise, we could find ourselves in a lawsuit from an inmate charging us with discrimination.
>
> We will do what legal counsel advises, but we want the community to know that *we are not interested in selling the paper to Supermax prisoners* and we see no value in doing so.

(emphasis added). Based on this record, then, Henderson cannot prevail on a claim that the resolution has silenced the *Dial*.

Henderson's remaining arguments lack merit and, although considered, do not require elaboration. Henderson also raises a number of arguments for the first time in his reply brief. These arguments are waived. *See Valentine v. City of Chi.*, 452 F.3d 670, 678-79 (7th Cir. 2006).

AFFIRMED.