OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
*338 Defendant moved to vacate his judgment of conviction for attempted murder in the second degree and other related crimes on the ground that his rights under Brady v Maryland (373 US 83 [1963]) and People v Rosario (9 NY2d 286 [1961]) were violated and on the ground that there is newly discovered evidence.
This court decided the motion with respect to newly discovered evidence in a decision dated March 28, 2005. With respect to that branch of the motion that involved a Brady ¡Rosario violation, this court held a hearing that was conducted over several days beginning on May 12, 2005 and concluding on June 15, 2005. The parties were permitted to submit posthearing briefs and the defendant’s reply brief was received by this court on September 16, 2005. In determining that branch of the motion which involved the Brady/Rosario violation, this court hereby incorporates all of the documents submitted by the defendant and the People prior to the hearing of this matter in addition to the evidence introduced at the hearing. At the hearing, the defendant called two witnesses: Edmund Byrnes, Esq., trial counsel for defendant Poventud, and Douglas Lyons, Esq., trial counsel for codefendant Robert Maldonado. The People called one witness, Sergeant Kenneth Umlauft.
The defendant and a codefendant, Robert Maldonado, were convicted on April 29, 1998 of shooting Younis Duopo during a robbery of his livery cab. In May 2002, the Court of Appeals reversed the conviction of Robert Maldonado and remanded the case for a new trial. During the course of Maldonado’s second trial, defendant Poventud claims that new evidence was introduced which demonstrated that the prosecution did not turn over evidence that was favorable to the defendant, thus resulting in a Brady violation. Specifically, on March 10, 1997, the complainant viewed a photo array presented by Sergeant Kenneth Umlauft, selected an identification card bearing the photograph of Francisco Poventud, the defendant’s brother, initialed and dated it and wrote on a separate piece of paper “looks a lot like him.”*
At the heart of defendant’s motion is his assertion that he was not informed by the prosecution that the complainant had selected Francisco Poventud, the defendant’s brother, as a person resembling one of his assailants, nor did the prosecution provide the defense with any documentation written by the *339 complainant regarding said identification procedure, thus resulting in a Rosario violation. The piece of paper where the complainant wrote “looks a lot like him” was never turned over and has never been located though Sergeant Umlauft testified that it was placed in the case folder.
This court credits the testimony of defense counsel Edmund Byrnes and defense counsel Douglas Lyons. Defendant’s trial counsel, Edmund Byrnes, testified at the hearing that he was never informed by the District Attorney’s office of the identification proceeding involving defendant Poventud’s brother Francisco nor was the paper where he wrote “looks a lot like him” ever turned over to him. He testified at length as to how he would have used that identification procedure at the trial if he had been informed of it. The People allege that during the trial, Sergeant Umlauft had an off-the-record conversation with both Mr. Byrnes and cocounsel Douglas Lyons, wherein Sergeant Umlauft informed both attorneys as to this identification procedure involving defendant Poventud’s brother. Douglas Lyons, Esq., testified that he did not recall having an off-the-record conversation with Sergeant Umlauft which involved the identification procedure at issue. Both attorneys testified that there would be no strategic or tactical reason not to use that misidentification procedure at the trial when identification of the defendants played such a major role.
Sergeant Umlauft’s testimony was that he conducted the identification procedure at the hospital while the complainant was “awake” and “alert” but not able to speak. In addition, Sergeant Umlauft testified that the complainant did not have his glasses on but he looked at the photo array and wrote on a pad “looks like him.” Sergeant Umlauft had the complainant sign by the photo where he wrote that statement and testified that he had a conversation with the assigned Assistant District Attorney, Greg Turkin, about the identification proceeding. He further testified that Assistant District Attorney Turkin told him to speak to the two defense attorneys at a recess during the trial about the identification proceeding and he did so in the rear of the courtroom.
Under People v Vilardi (76 NY2d 67 [1990]), the standard to be used to determine whether or not a defendant is entitled to a new trial based upon the prosecution’s failure to disclose exculpatory material, which has been requested, is a “reasonable possibility” that the failure to disclose the exculpatory evidence contributed to the verdict. Moreover, CPL 240.45 (1) (a) states that:
*340 “After the jury has been sworn and before the prosecutor’s opening address . . . the prosecutor shall, subject to a protective order, make available to the defendant:
“(a) Any written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness’s testimony.”
The prosecutor failed to turn over the written statement by the complainant wherein he identified defendant Poventud’s brother; therefore, there was a violation under People v Rosario (9 NY2d 286 [1961]).
The numerous documents and transcripts submitted by the defendant in his motion demonstrate that the jury struggled with the issue of identification. In one of the jury’s notes, a copy of which was attached to defendant’s motion as exhibit C, the jury requested to hear the testimony of the complainant regarding one of the photo arrays, they wanted to view the two photo arrays entered into evidence, they wanted to see defendant Poventud’s identification cards from his wallet, and, more importantly, they wanted to hear testimony regarding “negative results.” (See, juror note No. 3, defendant’s exhibit C.) Moreover, the jury sent a note to the court during deliberations, indicating that they were “hopelessly deadlocked.” (See juror note No. 6, defendant’s exhibit 6.)
In a case such as this one where the conviction depended on the identification by the complainant of the defendants, an identification of an individual other than the defendants on trial for the robbery is of great magnitude. The People, in their brief submitted August 26, 2005, assert that the misidentification and written statement made by the complainant is not Brady material and that there is no reasonable possibility that the material would have contributed to the verdict because the complainant was not wearing his glasses at the time of the misidentification, was medicated, and he was “not completely coherent.” (People’s brief at 1-2.)
Those factors listed by the People are for the jury to weigh and determine what significance, if any, to place upon them. The fact is that there was an identification procedure performed whereby the complainant identified an individual other than the defendants on trial as committing the robbery. The question of whether defendant Poventud and his brother facially look similar or not in appearance especially in light of the fact that *341 defendant’s brother was incarcerated at the time of the robbery of Mr. Duopo is a crucial issue for the jury to consider. Whether or not material should be considered exculpatory and turned over to the defendant is not subject to question. This material was required by law to be turned over to the defense. What the defense and jury does with it is totally within their respective province of advancing a criminal defense and as factfinders.
Furthermore, whether or not the identification made by the complainant of the defendant’s brother was a “tentative identification” as the People allege is not a factor in determining whether material is Brady material or not. Any identification procedure or misidentification procedure made by a complainant should be turned over to a defendant who stands accused of the crime regardless of the importance that the District Attorney’s office may or may not place on it. The obligation to turn over such Brady material rests squarely on the shoulders of the prosecutor and, in this instance, the prosecutor failed in his obligation.
Moreover, glaringly absent from the hearing was testimony from the assigned Assistant District Attorney, Greg Turkin, though he was available to testify as to his version of the events. The People assert that Assistant District Attorney Greg Turkin directed the defense attorneys to speak with Sergeant Umlauft regarding the photo array in question. However, as the defendant correctly asserts, the prosecutor had an affirmative duty to inform defense counsel about the identification procedure and defense counsel should not have to go on a “fishing expedition” to obtain said material.
This court finds that the defendant met his burden by a preponderance of the evidence that Brady/Rosario material was not disclosed and that there is a reasonable possibility that the material in question could have affected the outcome of the trial.
Accordingly, the defendant’s conviction is hereby vacated and a new trial is hereby ordered which shall be preceded by a Wade hearing.

 There are several variations of the exact statement made by the complainant.