*124 WESLEY, J. filed the majority opinion in which KATZMANN, C.J., CALABRESI, POOLER, SACK, HALL, LYNCH, LOHIER, and CARNEY, JJ., joined.
LYNCH, J. filed a concurring opinion.
LOHIER, J. filed a concurring opinion in which KATZMANN, C.J., CALABRESI, POOLER, SACK, WESLEY, HALL, LYNCH, and CARNEY, JJ., joined.
CHIN, J. filed an opinion dissenting in part and concurring in part.
JACOBS, J. filed a dissenting opinion in which CABRANES, RAGGI, LIVINGSTON, and DRONEY, JJ., joined.
LIVINGSTON, J. filed a dissenting opinion in which JACOBS, CABRANES, RAGGI, and DRONEY, JJ., joined.
RICHARD C. WESLEY, Circuit Judge:
In June 1998, Marcos Poventud was convicted of attempted murder in the second degree and several other related crimes. New York courts upheld Poventud’s conviction on appeal. People v. Poventud, 300 A.D.2d 223, 752 N.Y.S.2d 654 (1st Dep’t 2002), leave denied 1 N.Y.3d 578, 775 N.Y.S.2d 794, 807 N.E.2d 907 (2003). In 2004, Poventud successfully brought a state collateral challenge to his conviction based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961). His conviction was vacated and a new trial ordered. People v. Poventud, 10 Misc.3d 337, 802 N.Y.S.2d 605, 608 (Sup.CtBronx Cnty.2005). While the State weighed appealing the Brady decision, Poventud pled guilty to the lesser charge of attempted robbery in the third degree, pursuant to a plea agreement that dismissed all other charges and stipulated to a one-year sentence (time already served). Upon entry of the plea, Poventud was immediately released. Thereafter, Poventud sued the City of New York and various police officers alleging a violation of his constitutional rights in his 1998 trial.
Poventud’s § 1983 claim is centered on the state court determination that he was denied access to evidence in the government’s possession that had a reasonable probability of affecting the result of his trial. The district court was of the view that this claim was at odds with Poventud’s later plea because, although the withheld evidence supported the alibi Poventud employed at his 1998 trial, his plea colloquy contradicted that defense. As a result, the district court determined that Poventud’s § 1983 claims called into question the validity of his 2006 plea and granted summary judgment for the defendants. It based its decision on a long-standing Supreme Court decision, Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions. Heck requires that “in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the [challenged] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus, 28 U.S.C. § 2254.” 512 U.S. at 486-87, 114 S.Ct. 2364.
Poventud did exactly what Heck required of him. He sought a state court determination that his due process rights were violated in his jury trial, he secured a *125 state court judgment vacating his 1998 conviction, and the State chose not to appeal. Heck, therefore, does not bar Poventud’s claims. Accordingly, the district court’s summary judgment for defendants is vacated and the case is remanded for further proceedings consistent with this opinion.[1]
Background
In March 1997, two men robbed livery cab driver Younis Duopo and shot him in the head or neck.[2] An initial search of the cab by Crime Scene Unit (“CSU”) detectives uncovered only a spent shell casing, five one dollar bills, and a black hat from the back seat. The day after the shooting, and after CSU searched the vehicle, New York City Police Department (“NYPD”) Detective Frankie Rosado reported to the garage and conducted his own search of the cab; this search revealed a wallet on the floor of the cab containing two ID cards that belonged to Poventud’s brother, Francisco Poventud. Sergeant Kenneth Umlauft prepared a photo array using the ID cards recovered from the cab; he showed Duopo the array and Duopo unequivocally identified Francisco as his shooter. The NYPD soon discovered that Francisco had been incarcerated at the time of the crime and turned to Poventud, who did not resemble the photograph of Francisco shown to Duopo, as the most likely carrier of Francisco’s wallet.[3]
On consecutive days one week after the crime, Rosado and NYPD officer Daniel Toohey showed Duopo photo arrays containing Poventud’s picture; Duopo did not identify Poventud as the perpetrator on either occasion. The day after the second failed identification, NYPD officers showed Duopo Poventud’s picture for a third time. Later that day, Duopo viewed Poventud’s picture for a fourth time and he identified him as the shooter. The officers brought Poventud in to take his statement, at which point Duopo identified him in a lineup. Despite NYPD policies forbidding such behavior, the officers neither preserved nor disclosed to the Bronx District Attorney’s Office the photo array in which Duopo mistakenly identified Francisco.
Assistant District Attorney (“ADA”) Gregg Turkin prosecuted Poventud and *126 codefendant Robert Maldonado, whom Duopo also identified in a lineup. Before trial, Turkin asked Umlauft about some stray photographs in the file; Umlauft explained them away without disclosing that he had completed a separate photo array from which Duopo had identified Francisco as the shooter. Turkin, ignorant of this information, did not disclose it to the defense.
At trial in 1998, Duopo was the only witness to identify Poventud as the shooter. Defense counsel tried to impeach the credibility of Duopo’s identification by focusing on the multiple attempts that it took to identify Poventud; these efforts were bolstered by Duopo’s two additional mistaken identifications of Maldonado’s brother as Poventud’s partner in crime. Poventud’s defense was that he was not present in the cab; he testified that he was at a neighbor’s apartment playing video games instead. He further posited that Duopo was shot by three men who were arrested for another shooting of a livery cab driver, seventeen days after the Duopo shooting, using the same gun used to shoot Duopo. Although Umlauft testified, the defense, still unaware of the victim’s misidentifications of Francisco, was unable to question Umlauft or Duopo about them.
The jury submitted requests for more information about Duopo’s failures to identify Poventud and a note indicating that it was “hopelessly deadlocked” after four days of deliberations. It convicted both Poventud and Maldonado on the fifth day; Poventud was convicted of attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree. The judge sentenced him to an indeterminate sentence of 10 to 20 years’ imprisonment.
In 2002, Maldonado’s conviction was overturned by the New York Court of Appeals, People v. Maldonado, 97 N.Y.2d 522, 743 N.Y.S.2d 389, 769 N.E.2d 1281 (2002), while Poventud’s conviction was affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied. People v. Poventud, 300 A.D.2d 223, 752 N.Y.S.2d 654 (1st Dep’t 2002), leave denied, 1 N.Y.3d 578, 775 N.Y.S.2d 794, 807 N.E.2d 907 (2003).[4] During Maldonado’s retrial, new ADA Jeremy Shockett learned about Duopo’s erroneous identification of Francisco. Shockett disclosed this information to defense counsel. Maldonado was acquitted.
Based on the newly revealed information, Poventud moved, pursuant to New York Criminal Procedure Law § 440.10, to vacate his conviction. People v. Poventud, 10 Misc.3d 337, 802 N.Y.S.2d 605 (2005). Finding a violation of the disclosure obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), the court vacated Poventud’s conviction in October 2005.
The District Attorney’s Office opposed Poventud’s release on bail and indicated its desire to appeal the court’s § 440.10 decision. Pursuant to an agreement with the prosecution, Poventud pled guilty in January 2006 to attempted robbery in the third degree, a nonviolent class E felony, with a stipulated one-year sentence. He was immediately released.
In May 2007, Poventud initiated this suit, alleging that his 1998 conviction violated his constitutional right to due process. In 2009, he stayed this suit pending a state court challenge to the validity of his guilty plea. Poventud abandoned that col *127 lateral attack, however, and refocused on his claim under 42 U.S.C. § 1983.
In 2011, the defendants moved for summary judgment, asserting that Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, barred Poventud’s constitutional tort claims. Poventud argued that his plea had nothing to do with his § 1983 claim, which concerned his jury trial conviction that had been vacated as a result of his Brady victory. Judge Batts rejected that view and granted the motion, finding that Poventud’s § 1983 suit challenged a state court conviction (his plea) which had not been vacated. Poventud v. City of New York, No. 07-CV-3998(DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012). Judge Batts saw a connection between the undisclosed exculpatory evidence and Poventud’s defense at trial. She then concluded that Poventud’s alibi was factually inconsistent with his subsequent guilty plea. Id.[5] Because of the relationship that she perceived between the misidentification evidence and the erroneous alibi at Poventud’s 1998 trial, Judge Batts required that Poventud prove a favorable termination of any charge arising from the criminal transaction that occurred with the shooting and robbery, consistent with the requirements of malicious prosecution claims. Id. (citing, inter alia, Smith-Hunter v. Harvey, 95 N.Y.2d 191, 196-97, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2002)). Because a plea to a lesser-included charge does not meet that requirement, Judge Batts held that Heck barred Poventud’s claim. Id.
Poventud appealed to a panel of this Court in 2012. In April 2013, a divided panel held that Heck did not apply to Poventud’s lawsuit because he had been released from prison and therefore no longer had access to habeas corpus remedies. Poventud, 715 F.3d at 60.[6] We ordered this rehearing en banc, vacated the panel’s opinion,[7] and, for the reasons stated below, find that Heck does not bar Poventud’s § 1983 suit because his claim does not necessarily imply the invalidity of his outstanding conviction.
Governing Law
I. 42 U.S.C. § 1983, Heck, and the Invalidity of Outstanding Convictions
In passing the Ku Klux Klan Act of 1871, 17 Stat. 13, Congress created a cause *128 of action that gave “a remedy to parties deprived of constitutional rights, privileges and immunities by an official’s abuse of his position.” Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled on other grounds by Monell v. Dep’t of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). “It was not the unavailability of state remedies but the failure of certain States to enforce the laws with an equal hand that furnished the powerful momentum behind this ‘force bill,’ ” Monroe, 365 U.S. at 174-75, 81 S.Ct. 473 (citation omitted), which is now codified at 42 U.S.C. § 1983. This statute provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
The broad language of § 1983 suggests its applicability to cases involving any constitutional deprivation. Indeed, the breadth of § 1983 made it appealing to state prisoners who sought to challenge their confinement as unconstitutional. However, “[t]he Supreme Court, in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), has effectively subordinated the § 1983 remedy to the writ of habeas corpus when the remedies would overlap (and to some extent, even when they do not).” Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, Hart & Wechsler’s The Federal Courts & The Federal System 966 (6th ed.2009).
In Preiser, the Supreme Court denied a cause of action under § 1983 for state prisoners challenging their deprivation of good-conduct-time credits pursuant to state administrative procedures and seeking “a determination that [they were] entitled to immediate release or a speedier release from [state] imprisonment.” 411 U.S. at 500, 93 S.Ct. 1827. Because the prisoners were “challenging the very fact or duration of [their] physical imprisonment,” id., which the Court described as “the traditional function of the writ [of habeas corpus ],” id. at 484, 93 S.Ct. 1827, the Court held that habeas corpus provided the sole vehicle to seek this relief, id at 500, 93 S.Ct. 1827. The prisoners conceded “that a state prisoner challenging his underlying conviction and sentence on federal constitutional grounds in a federal court is limited to habeas corpus,” and the Court declined to recognize a distinction where the challenge was to a final administrative decision. Id. at 489, 93 S.Ct. 1827.
The year after Preiser was decided, the Supreme Court addressed a due process claim in which prisoners alleged that a prison’s procedures for deprivation of good time credits were constitutionally defective and sought restoration of the credits, institution of a new plan by prison officials, and “damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedures.” Wolff v. McDonnell, 418 U.S. 539, 553, 94 S.Ct. *129 2963, 41 L.Ed.2d 935 (1974). The Court held that Preiser foreclosed the complaint’s quest for “restoration of good-time credits.” Id. at 554, 94 S.Ct. 2963. However, “Preiser expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. [The prisoners’] damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time....” Id. (citation omitted).
In Heck, the Court noted the distinction between the fate of the prisoners’ plea for good-time credits and for damages arising from claims of administrative process that ran afoul of due process. 512 U.S. at 482, 114 S.Ct. 2364. Critically, the Court read Wolff to permit prisoners to bring “a § 1983 claim for using the wrong procedures, not for reaching the wrong result.” Id. at 482-83, 114 S.Ct. 2364. Recognizing that a due process claim could morph into a “wrong result” claim, the Court was careful to note that the damages for the use of the wrong procedures did not need to be “measured by the actual loss of good time.” Id. at 482, 114 S.Ct. 2364. “Thus, the claim at issue in Wolff did not call into question the lawfulness of the plaintiffs continuing confinement.” Id. at 483, 114 S.Ct. 2364 (emphasis in original).[8]
Roy Heck was convicted of voluntary manslaughter for killing his wife. 512 U.S. at 478, 114 S.Ct. 2364. While his direct appeal of his conviction was pending in state court,[9] Heck brought a § 1983 suit alleging that Indiana police and investigators had “knowingly destroyed evidence which was exculpatory in nature and could have proved [his] innocence,” id. at 479, 114 S.Ct. 2364 (internal quotation marks omitted). Heck’s § 1983 suit “sought, among other things, compensatory and punitive monetary damages,” but not release.[10] Id. Heck sought reimbursement for the violation of his constitutional rights based on his allegedly unlawful confinement. The trouble was that Heck was still in prison pursuant to his judgment of conviction as he pursued his suit.
Rejecting proposals for an exhaustion requirement, the Heck Court explicitly held that damages actions could be brought by state prisoners before exhausting all state remedies; however, it noted that this proposition “may not be true ... when establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction. In that situation, the claimant can be said to be ‘attacking the fact or length of confinement,’ ” which is impermissible. 512 U.S. at 481-82, 114 S.Ct. 2364 (quoting Preiser, 411 U.S. at 490, 93 S.Ct. 1827) (emphasis and alterations omitted). “[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence *130 invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus, 28 U.S.C. § 2254.” Id. at 486-87, 114 S.Ct. 2364. As Heck’s civil claim relied on his innocence and challenged the validity of the conviction that secured his incarceration, it met none of these criteria; he had no cause of action under § 1983.
In its analysis, the Court relied on an analogy to the common law tort of malicious prosecution “because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process.” Heck, 512 U.S. at 484, 114 S.Ct. 2364. The Court focused on the favorable termination requirement, an “element that must be alleged and proved in a malicious prosecution action.” Id. The benefit of this rule is that it “ ‘avoids parallel litigation over the issues of probable cause and guilt and it precludes the possibility of the elaimant[’s] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.’ ” Id. (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, at 24 (1991)) (alteration omitted). To preserve “finality and consistency,” id. at 485, 114 S.Ct. 2364, the Court applied “the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments ... to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution,” id. at 486,114 S.Ct. 2364.
The analogy to malicious prosecution continues throughout Heck. The Court held that “[jjust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiffs favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.” Id. at 489-90, 114 S.Ct. 2364 (internal citations omitted). However, the opinion stops short of holding that malicious prosecution’s favorable termination requirement, as applied at the common law, governs all § 1983 suits — and for good reason. The Heck Court dealt only with Heck’s claim and its interaction with the available writ of habeas corpus. There was no reason for the Court to attempt to divine every possible permutation of constitutional tort related to criminal proceedings that might find its way into federal courtrooms as a § 1983 claim. The only issue in Heck was whether a § 1983 claim could be brought when that claim suggested the invalidity of an existing state court conviction.
II. Malicious Prosecution Suits and Favorable Termination
Malicious prosecution suits require, as an element of the offense, “ ‘the termination of the proceeding in favor of the accused.’ ” Smith-Hunter, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2002) (quoting Broughton v. State of New York, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).[11] “[U]nder the *131 common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action.” Smith-Hunter, 95 N.Y.2d at 195, 712 N.Y.S.2d 438, 734 N.E.2d 750. (citations omitted). “A termination is not favorable to the accused, [however], if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Indeed, it is hornbook law that “where charges are withdrawn or the prosecution is terminated by reason of a compromise into which the accused has entered voluntarily, there is no sufficient termination in favor of the accused.’ ” Id. at 196-97, 712 N.Y.S.2d 438, 734 N.E.2d 750 (quoting Prosser and Keeton, Torts § 119, at 875 (5th ed.1984)) (alterations omitted); see also Restatement (Second) of Torts § 660(d) (1977).
In the context of § 1983 malicious prosecution cases, Heck’s bar is coextensive with the favorable termination requirement. See, e.g., McNeill v. People of City and State of N.Y., No. 06-CV-4843(NGG), 2006 WL 3050867, at *2-3 (E.D.N.Y. Oct. 24, 2006), aff'd by summary order, 242 Fed.Appx. 777 (2d Cir.2007); Papeskov v. Brown, No. 97-CIV-5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998), aff'd, 173 F.3d 845 (table) (2d Cir. 1999). In these cases, as in state malicious prosecution cases, the tort cannot stand unless the underlying criminal cases ‘“finally end[ ] in failure.’ ” DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir.1996) (quoting Burt v. Smith, 181 N.Y. 1, 5, 73 N.E. 495 (1905)) (emphasis omitted). “It is not surprising, therefore, that several United States Courts of Appeals have cited [Heck v.] Humphrey as authority for the proposition that § 1983 claims for malicious prosecution do not accrue until their respective criminal prosecutions end in acquittal.” Id. at 658.
In DiBlasio — rightly decided and unaffected by our holding today — a panel of this Court addressed Mario DiBlasio’s claim of malicious prosecution. DiBlasio, convicted following a jury trial of criminal sale of cocaine and related charges, secured vacatur of his conviction through a habeas suit brought in the Eastern District of New York that alleged that the state failed to produce or identify a confidential informant. Id. at 655. On retrial, DiBlasio was convicted of only one of the lesser included offenses. Id. He then sued under § 1983, “alleging malicious prosecution by the police officers.” Id. He contended that his conviction of a lesser offense was a favorable result that entitled him to damages for malicious prosecution on the more serious crimes. The district court dismissed and we affirmed. Id. at 656, 659.
DiBlasio was successful in challenging his initial conviction, seemingly in compliance with Heck’s mandate. He was retried and convicted, but only for a lesser offense. DiBlasio contended that this was a favorable result as required by Heck. Because DiBlasio’s claim was for malicious prosecution, the panel disagreed. “Although in some instances a habeas court may terminate a criminal proceeding in the defendant’s favor, the reversal of a conviction and remand for a new trial does not constitute such a termination.” DiBlasio, 102 F.3d at 658. The Court, applying the malicious prosecution standard, *132 “h[e]ld that the criminal proceeding terminated when DiBlasio was convicted on the retrial. The writ could not be considered an ‘indication of innocence’ since DiBlasio conceded both the possession and sale of the cocaine.” Id. The fact that the ultimate conviction was on a lesser count was irrelevant, because the charges arising out of the criminal transaction had to be brought together and as a whole “[t]he State’s case did not end in failure or in DiBlasio’s favor.” Id. at 659. DiBlasio’s § 1983 malicious prosecution claim was thus properly Heck-barred (despite the fact that his initial conviction was vacated) because malicious prosecution under New York law requires “favorable termination of the proceedings” and a valid conviction on the lesser crime prevented the court from finding a “favorable termination.” Either the outstanding conviction was invalid, or the elements of malicious prosecution were not met; DiBlasio is precisely the sort of case in which “a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.” Heck, 512 U.S. at 487, 114 S.Ct. 2364.
Not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination. “Contrary to the district court’s view in this case, Heck does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff’s favor. A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action.” VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir.2006) (emphasis retained, internal quotation marks and alterations omitted); cf. Jackson v. Suffolk Cnty. Homicide Bureau, 135 F.3d 254, 257 (2d Cir.1998) (“[A] claim for use of excessive force lacks the requisite relationship to the conviction.... [A] finding that excessive force had in fact been used would not necessarily require the invalidation of the conviction.”).
Unlike malicious prosecutions, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction. For example, when a suspect sues his arresting officer for excessive force, a § 1983 suit may proceed even if the suspect is ultimately convicted of resisting arrest. VanGilder, 435 F.3d at 692. When a plaintiff is unlawfully arrested without probable cause, his § 1983 claim accrues before any conviction. Wallace v. Kato, 549 U.S. 384, 397, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); see also Morris v. Noe, 672 F.3d 1185, 1193-94 n. 2 (10th Cir.2012). Even Heck acknowledges that many unreasonable searches could lead to § 1983 actions that exist independent of the termination of the criminal proceedings. Heck, 512 U.S. at 487 n. 7, 114 S.Ct. 2364; see also Gibson v. Superintendent of N.J. Dep’t of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 448 (3d Cir. 2005), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181, 188 (3d Cir.2010).
III. Other § 1983 Claims, Including Brady Claims
This Court has emphatically and properly confirmed that Brady-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the Brady violation occurred.[12] Amaker v. Weiner, 179 F.3d *133 48, 51-52 (2d Cir.1999). That should come as no surprise; the remedy for a Brady violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to her.
“ ‘There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.’ ” United States v. Rivas, 377 F.3d 195, 199 (2d Cir.2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). To establish prejudice, a plaintiff must show materiality:
‘A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant’s acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.’
Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir.2001) (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (alterations omitted, emphasis added).[13] “While Brady ensures a fair trial, a defendant’s right to pre-trial disclosure under Brady is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed,” much less that he is in fact innocent. Osborne v. Dist. Att’y’s Office for Third Jud. Dist., 521 F.3d 1118, 1132 (9th Cir.2008), rev’d on other grounds, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). The remedy for a Brady claim is therefore a new trial, as proof of the constitutional violation need not be at odds with his guilt. See, e.g., United States v. Sipe, 388 F.3d 471, 493 (5th Cir.2004).
This Court’s seminal Brady/Heck case was brought pro se by Anthony Amaker, who had been convicted of second degree murder in Brooklyn in 1989. See People v. Amaker, 195 A.D.2d 605, 605, 602 N.Y.S.2d 546 (2d Dep’t 1993). The Appellate Division affirmed his conviction, rejecting his ineffective assistance of counsel claim, id.; leave to appeal was denied by the Court of Appeals. People v. Amaker, 82 N.Y.2d 804, 604 N.Y.S.2d 940, 624 N.E.2d 1035 (1993) (table decision). While incarcerated pursuant to his conviction, Amaker brought a § 1983 suit alleging a conspiracy by “police, prosecutors, [his] defense attorneys, the trial judge, an eyewitness, and various court personnel ... to secure [his] conviction ... by manufacturing inculpatory evidence and subsequently suppressing evidence probative of their misconduct.” Amaker v. Weiner, 179 F.3d at 49. This Court appropriately rejected the argument that Heck was not triggered by Amaker’s “claim that his light to meaningful court access ha[d] been denied by the withholding of exculpatory evidence.” Id. at 51. “In substance ... this claim sounds under *134 Brady v. Maryland, and therefore does indeed call into question the validity of his conviction. Accordingly, it is barred by Heck.” Id. (citation omitted). Success on Amaker’s claim would mean that his conviction, which was not only still on the books but which actually provided the basis for his ongoing incarceration, was the product of a Brady violation (and a massive cover-up). Id.
But Heck does not present the same bar to § 1983-suits where the underlying conviction has already been expunged; the conviction is no longer “outstanding.” See, e.g., Moldowan v. City of Warren, 578 F.3d 351, 376-77 (6th Cir. 2009).[14] Even when a defendant is retried, a § 1983 suit concerning the earlier trial could not impeach the new trial’s result. Smith v. Gonzales, 222 F.3d 1220, 1222 (10th Cir.2000). A court “invalidate[s] the final judgment in [a] state criminal trial when [it] vacate[s] [a] conviction.” Id. From that moment on, a § 1983 suit would not demonstrate the invalidity of the vacated conviction. Id. It also would not impugn a retrial, which on its face could not replicate the constitutional violations at issue (since the defendant must, by definition, have been made aware of the Brady material before vacatur). Id.
Herein lies the district court’s error. The district court treated Poventud’s case as though it were a malicious prosecution claim.[15] It measured his admission in the subsequent plea agreement against his claims in his Brady submission. Because his 2006 plea was at odds with his alibi defense at his 1998 trial, Judge Batts concluded that his recovery for a Brady claim would call his plea into question. That view misunderstands Brady and its correlation to § 1983 claims asserting only violations of the right to due process. The district court’s view incorrectly presumes that, on the facts of this case, the State could violate Poventud’s Brady rights only if Poventud is an innocent man. This last restriction has no basis in the Brady case law; materiality does not depend on factual innocence, but rather what would have been proven absent the violation. “[T]he scope of a defendant’s [Bra(%-based] constitutional right[]is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial.” United States v. Coppa, 267 F.3d 132, 140 (2d Cir.2001) (emphasis added) (citing Strickler, 527 U.S. at 281, 119 S.Ct. 1936).[16] In this *135 case, Poventud has the right to argue to the jury that, with the main State witness impeached, he would have been acquitted based on reasonable doubt or convicted on a lesser charge.[17]
We find the First Circuit’s decision in Olsen v. Correiro analogous and instructive. 189 F.3d 52, 55 (1st Cir.1999). Olsen, convicted in 1986 of first degree murder, secured vacatur (based on the investigating officers’ failure to disclose impeachment evidence) and in 1992 pled nolo contendere to the lesser charge of manslaughter, with the State’s agreement to recommend time served. Id. He was sentenced to time served and released; he then sued under § 1983 “for damages arising from the murder charge and conviction.” Id. He was awarded $1.5 million in compensatory damages based on his incarceration; that verdict was overturned by the district court pursuant to Heck. A second trial resulted in a verdict again in his favor, but this time with a damages award of only $6,000.
The First Circuit upheld the district court’s decisions. To permit Olsen to collect a considerable sum in “incarceration-based damages” would have impugned the validity of his later manslaughter conviction, as Olsen did not serve a day in prison over his lawful sentence for manslaughter, despite his initial murder conviction. Id. at 55, 69. However, the court did not disturb that portion of the jury’s award that was based on “evidence of other damages associated with his murder trial and conviction.” Id. at 55. The question of damages was left for the jury, which was free to award damages so long as it confined its consideration to the harms that flowed from the Brady violation and not to the imprisonment attributable to his lawful conviction for manslaughter. Id.
In other contexts, this Court has recognized procedural claims under § 1983 even when the denial of due process did not result in concrete injury. Brody v. Village of Port Chester, 345 F.3d 103, 121 (2d Cir.2003) (Sotomayor, Judge) (“[Plaintiff] still may be entitled to declaratory relief and nominal damages in the event a procedural due process violation is proven, even if the district court does not find that [he] ... would have prevailed” in the chal *136 lenged proceeding).[18] “Because the right to procedural due process is ‘absolute’ in the sense that it does not depend upon the merits of a claimant’s substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.” Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (internal citations omitted). The Supreme Court has recognized the availability of § 1983 actions for “damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedures.” Wolff, 418 U.S. at 553, 94 S.Ct. 2963. It is for the district court and the jury to determine “to what damages, if any, [such a plaintiff] is entitled.” Brody v. Village of Port Chester, 434 F.3d 121, 132 n. 8 (2d Cir.2005).
IV. Poventud’s § 1983 Brady Claim Is Consistent with his Guilty Plea
Several of the foregoing principles circumscribe Poventud’s Brady-based § 1983 claim. First, his claim must relate to his 1998 conviction and not to the 2006 conviction.[19] Amaker, 179 F.3d at 52. Second, had Poventud’s complaint sounded in malicious prosecution, rather than in a procedural J3radi/-based claim, that claim would have been barred because of the favorable termination element of the malicious prosecution tort. DiBlasio, 102 F.3d at 657. Finally, Poventud cannot seek to collect damages for the time that he served pursuant to his plea agreement (that is, for the year-long term of imprisonment). Olsen, 189 F.3d at 55. With these limitations in mind, we find that Poventud has stated a § 1983 claim.
On its face, Poventud’s complaint alleges deficiencies in his 1998 trial that are entirely independent of the proceedings related to his 2006 plea. See Second Amended Complaint at ¶¶ 1, 115-39. The complaint alleges that the defendants “caused [his] unconstitutional conviction and subsequent imprisonment by deliberately suppressing exculpatory evidence, known as Brady material,’ and also lying to and misleading prosecutors.” Id. ¶ 2. Because Poventud was aware of the undisclosed exculpatory material prior to his guilty plea, his plea could not have implicated the constitutional violations at issue in his trial. Following vacatur of his conviction, a favorable judgment in this § 1983 action would not render invalid any subsequent, plea-based judgment against Poventud. Cf. Smith, 222 F.3d at 1222. Amaker (like Heck, essentially a Brady case) ensures that Heck’s, bar prevents Poventud from alleging a Brady violation with regard to any valid conviction; however, unlike Amaker’s, Poventud’s complaint does not challenge the conviction pursuant to which the State continues to view him a felon. The 2006 conviction is a “clean” conviction, untainted by the Brady violation associated with the 1998 convie *137 tion. Just as Poventud’s 1998 conviction is expunged for future sentencing purposes, so, too, is it expunged for this § 1983 action.
Second, Poventud’s complaint states claims entirely distinct from malicious prosecution. The complaint never mentions malicious prosecution, does not allege most of the elements of malicious prosecution (including favorable termination), and focuses heavily on the defendants’ failure to adhere to their disclosure obligations. See Second Amended Complaint. Unlike DiBlasio’s malicious prosecution claim, Poventud’s Brady claim is compatible with the validity of his subsequent conviction.[20]
Poventud’s complaint seeks damages for his time in prison, but excludes the time that he served pursuant to his unchallenged 2006 guilty plea. See Second Amended Complaint ¶ 1. We need not decide what damages might be available for Poventud, but we note that the Supreme Court has “recognized a § 1983 claim for using the wrong procedures,” even where a plaintiff could not collect for the court’s “reaching the wrong result.” Heck, 512 U.S. at 482-83, 114 S.Ct. 2364. Although under some circumstances, even a “challenge to the procedures could be such as necessarily to imply the invalidity of the judgment,” Edwards v. Balisok, 520 U.S. 641, 645, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), this logic applies only when the procedures resulted in a judgment that has not been impugned. Moreover, “the denial of procedural due process should be actionable for nominal damages without proof of actual injury.” Carey, 435 U.S. at 266, 98 S.Ct. 1042. The extent of Poventud’s damages stemming from the Brady violation that do not call into question the validity of his 2006 guilty plea is a fact-specific question that should be addressed first by the district court.[21] However, the existence of a cause of action is clear.
Poventud’s allocution acknowledged his presence at the scene of the crime, which was inconsistent with his alibi defense at trial. However, this does not defeat the viability of his Brady claim. As explained above, Brady does not require actual innocence, and even “ ‘[a] guilty man is entitled to a fair trial.’ ” People v. Buchalter, 289 N.Y. 181, 225, 45 N.E.2d 225 (1942) (Lehman, Chief Judge, concurring). In Brady, the Court held that Maryland violated the defendant’s constitutional rights by withholding evidence relevant to his sentencing, despite the fact “that nothing in the suppressed confession could have reduced *138 the appellant Brady’s offense below murder in the first degree” or related to his guilt or innocence. 373 U.S. at 90, 83 S.Ct. 1194 (internal quotation marks omitted).
Heck requires that “a § 1983 plaintiff must prove that the conviction or sentence has been ... declared invalid by a state tribunal authorized to make such determination,” inter alia. 512 U.S. at 486-87, 114 S.Ct. 2364. In this case, Poventud’s challenged conviction has been. People v. Poventud, 802 N.Y.S.2d at 608. Heck’s core concern of finality would not be undercut by Poventud’s success at trial; Poventud’s claim is premised on an unchallenged finding made in state court.[22]
Were Poventud to win at trial — far from a foregone conclusion — the legal status of his 2006 guilty plea would remain preserved. No element of his § 1983 Brady claim requires Poventud to prove his absence from the scene of the crime; if it did, his claim would be Heck-barred. Poventud’s success at trial would mean only that his 1998 conviction was the product of a constitutional violation; in this ease, a New York State court has already reached this determination and vacated the conviction as a result. See id.
Conclusion
Poventud’s claim is one of process. He asserts that members of the New York City Police Department willfully withheld exculpatory evidence that called into question the testimony of the only witness to place him at the scene of the crime. Poventud’s claims are not the stuff of prison idleness or self-absorption; he has proven his claims in state court and the State elected not to appeal his victory. Poventud’s conviction was vacated because it rested on a constitutional infirmity. Armed with the information previously denied him, Poventud accepted an offer from the State to plead to a lesser offense. He now seeks to recover from those who violated his right to a fair trial. He does not contest the legitimacy of his plea (nor could he). His claim is restricted to the acts of the police officers before and during his trial in 1998. Poventud’s victory in state court, securing vacatur of his jury trial conviction, gave life to his claim and separated it from the criminal activity that took place in the Bronx on March 6, 1997. Had Poventud claimed that the entire criminal process was one borne of malice, then our decision would be different. But his claims are circumscribed to the misdeeds of the police prior to his jury trial, and nothing more.
Judgment is VACATED and the case REMANDED to the district court for further proceedings consistent with this opinion.

. Thus, our decision today has no need to address the question of whether a plaintiff who challenges his allegedly unconstitutional conviction or incarceration, but is no longer in custody and therefore has no access to habeas, has recourse to a federal remedy under § 1983.

. These facts are drawn from the Second Amended Complaint and the Plaintiff's Response to Defendants’ Rule 56.1 Statement and Statement of Additional Facts. Although these facts may be disputed at trial, "[b]e-cause this case comes to us on [defendants’] motion for summary judgment, ‘the evidence of [Poventud] is to be believed, and all justifiable inferences are to be drawn in [his] favor.' ” Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

.Some of these facts are disputed by the panel’s dissenting opinion and in the dissents filed with our opinion today. See Poventud v. City of New York, 715 F.3d 57, 66 (2d Cir. 2013) (Jacobs, ludge, dissenting). At trial the defendants are, of course, free to argue to the jury that their version of these disputed facts is correct — for example, that Duopo wrote that Francisco Poventud "looks like” the shooter, see id. at 66 (internal quotation marks omitted); Francisco and Marcos bear a striking resemblance, see id. at 67; or the wallet was found "immediately” after the hold-up, Dissenting Op. of Judge Jacobs, post, at 151. As noted above, in an order granting summary judgment, we construe all genuine disputes of material fact in favor of the non-moving party. United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen’s Bank Account L7N01967, 731 F.3d 189, 192 (2d Cir.2013).

. Leave was denied by Judge G.B. Smith. See N.Y. C.P.L. § 460.20(2).

.Specifically, Judge Batts wrote:
Plaintiff seeks to avoid the conclusion that his suit calls the validity of his second conviction into question by arguing that his initial conviction was invalidated and that he does not challenge his subsequent conviction by guilty plea. Plaintiff's argument is unavailing. Plaintiff's guilty plea, which resulted in his second conviction and sentence, was to conduct which necessarily required his presence at the scene of the crime. To succeed on a § 1983 claim based on an alleged failure to reveal evidence supporting his claim to have been elsewhere when the crime to which he pleaded guilty occurred would thus call into question the validity of his conviction by guilty plea.
Poventud, 2012 WL 727802, at *3.

. To be fair, our request for briefing centered on the issue that provided the decisional pivot for the panel majority — the relationship of access to habeas relief and the use of § 1983. The result was that some of the briefing goes to a much broader issue than that which we decide today.

. In essence, the dissents want to revisit many of the issues that separated the judges on the initial panel. The dissents' continued unease with the earlier opinion is irrelevant to the task at hand. As we note several times in this opinion, we decide this matter on the narrowest possible grounds without passing any judgments on the views previously expressed by either the members of the panel majority, who considered themselves bound by circuit precedent in a way the en banc Court is not, or by the then lone dissenter.

. A later decision clarified that even suits alleging the use of improper procedures would be barred where "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment.” Edwards v. Balisok, 520 U.S. 641, 645, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

. The Indiana Supreme Court upheld Heck's conviction while his § 1983 case was pending before the Seventh Circuit. Id. at 479, 114 S.Ct. 2364.

.Heck’s two attempts at securing habeas relief had come up short: "his first petition for a writ of habeas corpus in Federal District Court was dismissed because it contained unexhausted claims; and his second federal habeas petition was denied, and the denial affirmed by the Seventh Circuit.” Id. at 479, 114 S.Ct. 2364.

. “'Over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the pre *131 requisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well’ ” Heck, 512 U.S. at 483, 114 S.Ct. 2364 (quoting Carey v. Piphus, 435 U.S. 247, 257-58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)) (alteration omitted). “Thus, to determine whether there is any bar to the present suit, we look first to the common law of torts." Heck, 512 U.S. at 483, 114 S.Ct. 2364.

. We reject out of hand defendants’ contention that Brady violations cannot provide a basis for a § 1983 claim. See, e.g., Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir.2011); Beck v. City of Muskogee Police Dep’t, 195 *133 F.3d 553, 560 (10th Cir.1999); Walker v. City of New York, 974 F.2d 293, 300 (2d Cir.1992).

. Of course, when a defendant is not proven guilty beyond a reasonable doubt, the only verdict “worthy of confidence” is an acquittal, regardless of the defendant’s actual guilt.

.Judge Livingston ignores this distinction in arguing that Skinner v. Switzer,-U.S.-, 131 S.Ct. 1289, 1300, 179 L.Ed.2d 233 (2011), comprises a general prohibition on Brady-based § 1983 claims. Dissenting Op. of Judge Livingston, post, at 165. Skinner, citing Amaker, notes that prisoners bringing Brady claims “seek a judgment qualifying them for immediate or speedier release from imprisonment,” and that such claims are “within the traditional core of habeas corpus.” Skinner, 131 S.Ct. at 1300 (internal quotation marks omitted). Since Poventud, who is no longer incarcerated and has already won post-conviction relief, does not seek release from imprisonment, the language that Judge Livingston excerpts from Skinner is misleading and irrelevant to the issue now before us.

. This is also the underlying premise of the dissents.

. Of course, there is a distinction between a victory at trial premised on the State’s failure to prove one’s guilt and a victory premised on the court’s misapprehension of the law. The dissents do not recognize this difference and therefore misunderstand Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), in which the Court assumed that counsel's failure to object based on then-prevailing but later-overturned circuit law was deficient and evaluated whether the defendant suffered prejudice with an awareness of the later-established legal standard. Failure to take advantage of the district court’s likely application of the circuit court's misappre *135 hension of the law was not prejudicial because a defendant has no right to benefit from a court's erroneous view of the law.
However, neither is the State entitled to sustain a conviction predicated on something less than proof beyond a reasonable doubt. No defendant has the right to benefit from a mistake of law; every defendant — even a guilty one — has the right to benefit from the State’s heavy burden at a criminal trial.

. The dissents ignore the important fact that Poventud’s guilty plea in 2006 was not to the same charges for which he was originally convicted and sentenced to prison. Judge Livingston’s reprisal of Judge Jacob’s lengthy dissent, in particular, ignores that Poventud was lawfully convicted only of a class E felony and sentenced to one year’s imprisonment. Dissenting Op. of Judge Livingston, post, at 171-72. Guilt of a lesser crime is not inconsistent with the existence of reasonable doubt at an earlier trial for a more serious crime. Poventud's later plea does confirm some criminal liability for the acts that occurred in Duopo's cab, but it does not reaffirm that he would indisputably have been found guilty of attempted murder and sentenced to at least nine years' imprisonment at his 1998 trial.
Judge Livingston’s dissent also reveals an inability or unwillingness to distinguish between an argument that Poventud is innocent and an argument that the State did not carry its burden of proving him guilty beyond a reasonable doubt. This is why she argues that Poventud’s later-established presence at the scene of the crime precludes him from alleging that the State did not prove him guilty beyond a reasonable doubt. Dissenting Op. of Judge Livingston, post, at 165-66.

. We should not be understood to imply that Poventud is entitled only to nominal damages. As we explain below, the principal thrust of our comments regarding nominal damages is that in light of their availability here, we need not consider at this stage of the proceedings whether any of Poventud’s incarceration-based damages are Heck-barred. This is a matter for the district court to decide in the first instance.

. Nothing in this analysis weighs on whether or not Poventud is precluded from challenging the validity of his 2006 conviction in a separate § 1983 action. A Brady claim cannot challenge a conviction obtained after disclosure of the Brady material; Poventud's claim therefore relates only to his 1998 conviction. Having decided the case on the narrower ground, we do not reach the broader issue on which the panel rested its decision. Poventud, 715 F.3d at 60.

. Assuming arguendo that Poventud’s claims did sound in malicious prosecution, these claims would be barred. DiBlasio, 102 F.3d at 659. Specifically, claims that undisclosed evidence included “evidence of innocence,” Second Amended Complaint ¶ 128, do suggest a malicious prosecution claim. However, while Heck's complaint alleged destruction of "evidence which was exculpatory in nature and could have proved [his] innocence,” Heck, 512 U.S. at 479, 114 S.Ct. 2364 (quotation marks omitted), Poventud’s complaint is less concerned with his innocence and instead focuses on "evidence that an identifying witness was unreliable, and evidence impeaching the credibility of significant prosecution witnesses.” Second Amended Complaint ¶ 128.

. The dissents' treatment of causation will startle those who regularly toil in the world of tort law. The Restatement Third (which expressly says it will call proximate cause “scope of liability”) is quite clear on the matter: "Duty is a question of law for the court, see § 7, while scope of liability, although very much an evaluative matter, is treated as a question of fact for the factfinder." Restatement (Third) of Torts: Phys. & Emot. Harm § 29 (2010). Ultimately, the problem here, as in much of the dissents, is the dissents’ confusion between factors that may be appropriate — and even winning — defenses to Poventud's § 1983 claims, and factors that instead would lead to the dismissal of the whole § 1983 action ab initio for violating the doctrine of Heck v. Humphrey.

. As things stand in the New York courts, (1) Poventud successfully proved a Brady violation in his first trial, which the State elected not to appeal; and (2) Poventud pled guilty to attempted robbery in the third degree. We believe these two judgments are logically consistent, and it is not clear why a third judgment, reaffirming the existence of a Brady violation at the first trial, would suddenly impugn the second conviction in a way that the outstanding judgment based on the same conviction does not.