**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FREDERICK LEE JACKSON,
        *Plaintiff-Appellant*,

v.

MICHAEL BARNES; VENTURA
COUNTY SHERIFF'S DEPARTMENT;
VENTURA COUNTY DISTRICT
ATTORNEY'S OFFICE; PATRICIA M.
MURPHY,
        *Defendants-Appellees*.

No. 09-55763

D.C. No.
2:04-cv-08017-
RSWL-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted
January 8, 2013—Pasadena, California

Filed April 15, 2014

Before: William C. Canby, Jr., Stephen Reinhardt,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's dismissal of Frederick Jackson's three claims brought against Ventura County officials and Departments under 42 U.S.C. § 1983, related to *Miranda* violations that resulted in the vacation of Jackson's initial first degree murder conviction.

Jackson's initial first degree murder conviction was reversed due to a violation of his *Miranda* rights, and after a retrial, he was again convicted, this time without the use of the illegally obtained evidence.

The panel reversed the district court's rulings with respect to all three of Jackson's claims in whole or in part. Regarding Jackson's claim that Ventura County Sheriff Michael Barnes violated his Fifth Amendment rights by interrogating him without giving him the requisite *Miranda* warnings, the panel held that the claim is neither barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), nor time-barred and that Jackson may be able to show that he was entitled to damages, if only nominal. Regarding Jackson's claim that the Ventura County Sheriff's Department violated his Fifth Amendment rights by failing to supervise Barnes, the panel reversed the district court's judgment on the pleadings for the Sheriff's Department because Jackson sufficiently pleaded a "policy of inaction" for which the Sheriff's Department, as a county actor, was subject to suit under § 1983. The panel

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that Jackson properly pleaded a claim of *Monell v. N.Y.C. Dep't of Soc. Servc.*, 436 U.S. 658 (1978), liability, and the Sheriff's Department was subject to suit under 42 U.S.C. § 1983 for its investigative activities. The panel further held that the California Supreme Court's holding in *Vengas v. Cnty of L.A.*, 87 P.3d 1 (Cal. 2004), did not displace this court's holding in *Brewster v. Shasta Cnty.*, 275 F.3d 803, 807-08 9th Cir. 2001), that a California sheriff is a county official when investigating criminal activity. Finally, the panel affirmed the district court's dismissal of Jackson's claim of prosecutorial misconduct against the Ventura County District Attorney's Office, but instructed the district court to grant Jackson leave to amend his complaint to state a claim against Ventura County District Attorney Patricia Murphy.

## COUNSEL

Todd E. Lundell (argued) and Richard A. Derevan, Snell & Wilmer, Costa Mesa, California, for Plaintiff-Appellant.

Jeffrey Held (argued) and Alan E. Wisotsky, Wisotsky, Procter & Shyer, Oxnard, California, for Defendants-Appellees.

## OPINION

REINHARDT, Circuit Judge:

This is an unusual case in which the plaintiff is suing under 42 U.S.C. § 1983 for damages as a result of his conviction for first degree murder in violation of his Fifth Amendment rights. The case is unusual in that the plaintiff was convicted at his first trial in which the prosecution relied on evidence obtained in violation of his *Miranda* rights, and after the conviction was reversed he was again convicted, this time without the use of the illegally obtained evidence. The plaintiff then sued for the violation of his *Miranda* rights at the first trial. As a result of unusual circumstances, the plaintiff, even if successful, will in all likelihood recover only minimal damages. Nonetheless, we conclude that this is one of those cases in which a plaintiff who has been lawfully convicted is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), from bringing a § 1983 suit. We also consider which individuals and entities are proper defendants in this action, including whether we must follow our prior decision in *Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001), that a California sheriff is a county actor when investigating crimes.

## I.

In 1995, Frederick Lee Jackson was convicted in Ventura County Superior Court of rape and first degree murder. At trial, the jurors heard a taped interview conducted by Sergeant Michael Barnes of the Ventura County Sheriff's Department. Barnes had interviewed Jackson while Jackson was in police custody, and without giving Jackson the requisite *Miranda* warnings. In the interview, Jackson admitted to Barnes that

he "just happened to be there," i.e., at the scene of the murder. This statement contradicted Jackson's earlier statement that he was not at the scene of the murder but rather with his girlfriend—a statement the jurors also heard. *See generally Jackson v. Giurbino*, 364 F.3d 1002, 1005, 1007–12 (9th Cir. 2004).

On habeas review in 2004, we vacated Jackson's conviction for first degree murder.[1] Deeming the question "refreshingly simple," we held that Jackson's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated when Barnes interrogated him while he was in custody without giving him the requisite *Miranda* warnings. As a result, Jackson's inculpatory statement during this interrogation that he "just happened to be" at the scene of the murder was held inadmissible. *Jackson*, 364 F.3d at 1008–10. We further held that the trial court's constitutional error in admitting Jackson's statement was not harmless, and vacated Jackson's conviction for murder. *Id.* at 1011–12.

In 2005, the state retried Jackson. The retrial was completely insulated from the illegal testimony; the jurors did not learn of Jackson's statement to Barnes that he "just happened to be" at the scene of the crime. At the second trial, the jury, without hearing the illegally obtained evidence, convicted Jackson once again on the first degree murder charge, and Jackson was sentenced to 26 years' imprisonment.

Before the second trial, but after Jackson's initial conviction had been vacated, Jackson, proceeding pro se,

---

[1] We did not, however, vacate Jackson's rape conviction. *Jackson*, 364 F.3d at 1011–12.

filed the complaint that is the subject of this appeal. He brings three claims under 42 U.S.C. § 1983, all related to the *Miranda* violation that resulted in our vacating his first conviction. First, he contends that Barnes's un-*Mirandized* interrogation violated his Fifth Amendment rights because his resulting inculpatory statements were used against him at trial. Second, he claims that the Ventura County Sheriff's Department violated his Fifth Amendment rights by failing to supervise Barnes. Third, he asserts that Ventura County District Attorney Patricia M. Murphy and the Ventura County District Attorney's Office engaged in various illegal acts in prosecuting him. Jackson seeks millions of dollars in damages for these offenses. The district court granted summary judgment to Barnes, granted judgment on the pleadings to the remaining defendants, and dismissed the suit with prejudice. Jackson appeals the district court's dismissal of all three of his claims. We reverse.

## II.

Jackson first contends that the district court erred when it awarded defendants summary judgment on his claim that Barnes violated his Fifth Amendment rights by eliciting un-*Mirandized* inculpatory testimony that was used against him at trial. The district court rejected this claim on the ground that it was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants argue that, in addition to *Heck*, the claim is time-barred, and that, even if Jackson were to succeed on the claim, he would not be entitled to any damages. We hold that the grant of summary judgment was erroneous.

### A.

In *Heck v. Humphrey*, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87 (footnote omitted).[2] The Court also stated in *Heck*, however, that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487.

Subsequently, we held that under certain circumstances a plaintiff's § 1983 claim is not *Heck*-barred despite the existence of an outstanding criminal conviction against him.

---

[2] This is generally referred to as the "*Heck* bar." *Beets v. Cnty. of L.A.*, 669 F.3d 1038, 1042 (9th Cir. 2012).

For example, in *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001), we held that plaintiffs who had been convicted for driving under the influence of alcohol could challenge the way in which their blood had been drawn when they were arrested because their convictions were in no way the result of any blood evidence. The plaintiffs had pled *nolo contendre*, but since the "*convictions derive[d] from their pleas, not from verdicts obtained with supposedly illegal evidence*[, t]he validity of their convictions does not in any way depend upon the legality of the blood draws." 264 F.3d at 823; *see also Lockett v. Ericson*, 656 F.3d 892, 896–97 (9th Cir. 2011) (holding that a plaintiff who pled *nolo contendere* to reckless driving was not *Heck*-barred from bringing a § 1983 claim based on an alleged unlawful search because the outcome of the claim had no bearing on the validity of the plaintiff's plea); *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc) (holding that a plaintiff convicted of resisting arrest could bring a § 1983 action for excessive use of force if the excessive force was employed against him after he had engaged in the conduct that constituted the basis for his conviction, because in such a case success on his § 1983 action would not imply the invalidity of the conviction).

This, too, is a case in which a guilty plaintiff's claim is not barred by *Heck*. In this case it is Jackson's second conviction for first degree murder that is outstanding. It is undisputed that the second conviction was insulated from the inculpatory statements that are the subject of Jackson's § 1983 suit against Barnes. The first conviction is the case in which the Fifth Amendment violation occurred. Therefore a judgment in Jackson's favor would—far from "necessarily imply[ing]" the invalidity of his second conviction—not have any bearing on it. The only conviction a judgment in Jackson's favor would bear on is his first conviction, which

*was* "called into question by a federal court's issuance of a writ of habeas corpus." In fact, more than "called into question," it was reversed. *See Jackson*, 364 F.3d at 1011. Thus, Jackson's § 1983 claim against Barnes for the Fifth Amendment violation is not barred by *Heck*.

Our holding is similar to that of the Second Circuit in *Poventud v. City of New York*, No. 12-1011-CV, 2014 WL 182313, — F.3d — (2d Cir. Jan. 16, 2014) (en banc). In that case, the plaintiff was convicted of attempted murder, his conviction was vacated because of a *Brady* violation, and he then pled guilty to the lesser charge of attempted robbery. *Id.* at *1. The plaintiff brought a § 1983 suit against the City of New York and various police officers for the *Brady* violation. *Id.* The district court rejected the claim as *Heck*-barred, and the Second Circuit reversed. It held that "because [the plaintiff] was aware of the undisclosed exculpatory material prior to his guilty plea," his second conviction is a "'clean' conviction, untainted by the *Brady* violation associated with the [initial] conviction." *Id.* at *12. Therefore, the court concluded, "a favorable judgment in this § 1983 action would not render invalid" the plaintiff's second conviction, and thus his claim is not barred by *Heck*. *Id.* Similarly, here, Jackson's second conviction is a "clean conviction," as it was entirely insulated from the *Miranda* violation associated with his initial conviction. As in *Poventud*, "[w]ere [Jackson] to win at trial [of his § 1983 action] . . . the legal status of his [second conviction] would remain preserved." *Id.* at *13. Therefore, his claim against Barnes is not barred by *Heck*. *See also Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (holding that a plaintiff's § 1983 suit for a *Brady* violation would not have been *Heck*-barred even if the state had elected to retry him, as "under [the] holding in [the plaintiff's] habeas case, the prosecution was effectively prevented from

withholding the same exculpatory evidence if the State decided to retry [him]," and therefore "a favorable judgment in a § 1983 action would not have rendered invalid any outstanding criminal judgment against [him]").**³**

## B.

Defendants next contend that even if *Heck* does not bar Jackson's suit, the suit is barred by the statute of limitations. They are incorrect. In *Heck*, the Supreme Court stated that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489–90. We have applied this rule to a § 1983 suit based on a Fifth Amendment violation. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam). Under *Heck* and *Trimble*, Jackson's Fifth Amendment claim accrued when his initial conviction was overturned in March 2004. The length of the limitations period for § 1983 actions is governed by state law. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The parties agree, as they must, that the applicable statute of limitations under California law is two years. *Id.* ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions. . . . Effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury claims is two years instead of one." (citing Cal. Civ. Proc. Code § 335.1)). Jackson filed his complaint in

---

**³** We reject defendants' contention that *DiBlasio v. New York*, 102 F.3d 654, 657 (2d Cir. 1996), requires us to hold that Jackson's claim is *Heck*-barred. The holding of *DiBlasio* is limited to malicious prosecution cases, and therefore has no bearing on Jackson's Fifth Amendment claim against Barnes. *See Poventud*, 2014 WL 182313, at **6–8.

September 2004, six months after his claim accrued and well within the statute of limitations. Thus, Jackson's claim is not time-barred.

## C.

Defendants also contend that summary judgment was properly awarded to Barnes because, even if Jackson succeeds on the merits of his claim, he cannot show that he is entitled to damages. Defendants point out that Jackson was not imprisoned for any additional time as a result of his first, illegal conviction. They are correct, as at the time of Jackson's first conviction he had already begun to serve 29 years for various unrelated convictions. His earliest release date for those convictions, along with the rape conviction on which this Court denied relief, was in 2007, two years after Jackson was convicted for the second time. Thus, as defendants assert, Jackson is not entitled to compensatory damages for any time he spent in prison.

The fact that Jackson is not entitled to compensatory damages for any time he spent in prison does not mean, however, that he would not be entitled to *any* damages were he to prevail on the merits of his action. Although the district court did not reach the damages issue, it is clear, for example, that punitive damages may be recovered in appropriate circumstances under § 1983. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). More important, success on the merits of his Fifth Amendment claim would entitle Jackson to an award of nominal damages. *See*

*Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002) ("[N]ominal damages must be awarded if a plaintiff proves a violation of his [or her] constitutional rights." (quoting *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000))).

### D.

In sum, we hold that Jackson's claim that Barnes violated his Fifth Amendment rights is neither *Heck*-barred nor time-barred, and that Jackson may be able to show that he is entitled to damages, especially nominal damages, for the *Miranda* violation. Therefore, we reverse the district court's grant of summary judgment in favor of defendants on the *Miranda* claim and remand for further proceedings.

### III.

Jackson next asserts that the district court erred in dismissing on the pleadings his claim that the Ventura County Sheriff's Department caused the violation of his Fifth Amendment rights by failing to supervise Barnes. The district court held that this claim was based solely on a theory of respondeat superior, which the Supreme Court rejected as a basis for liability under § 1983 in *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Jackson contends that the district court misread his complaint.

### A.

In *Monell*, the Supreme Court held that a local government body (such as, in this case, a sheriff's department) cannot be held liable under § 1983 "*solely* because it employs a tortfeasor—or, in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Local governing bodies *can* be held liable, however, where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

Under *Monell*, a local government body can be held liable under § 1983 for policies of inaction as well as policies of action. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185–86 (9th Cir. 2002). A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). In inaction cases, the plaintiff must show, first, "that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right." *Id.* (citations omitted) (internal quotation marks omitted). This requires showing that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* at 1145 (citations omitted). Second, the plaintiff must show "that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* at 1143 (citations omitted) (internal quotation marks omitted).

Jackson's claim against the Sheriff's Department, when liberally construed, *see Allen v. Gold Country Casino*,

464 F.3d 1044, 1048 (9th Cir. 2006) (holding that a pro se litigant's pleadings must be "liberally construed"), adequately states a policy of inaction. Jackson's alleged "policy of inaction" is the Department's "complete failure to supervise the practices of [its] deputies." He adequately states that the Department was on actual or constructive notice that this failure to supervise would likely result in a constitutional violation: he asserts that Barnes "routinely declined to read *Miranda* warnings" and that, because of the regular nature of Barnes's illegal activity, the Department "should have known or knew that this unconstitutional conduct was occurring." Finally, he asserts that this policy was the cause of the constitutional violation here; "[i]n the instant case," he alleges, "we are confronted with" the Department's failure to supervise its deputies. In reviewing the district court's judgment on the pleadings, we assume that the facts that Jackson alleges are true, *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011), that is, we assume that Barnes in fact routinely declined to give *Miranda* warnings, and that the Department in fact did not supervise the practices of its deputies. With this assumption, Jackson has pleaded a policy of inaction, and therefore the district court erred in granting defendants judgment on the pleadings on that basis. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (holding that judgment on the pleadings is properly granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law").

Defendants contend that Jackson's complaint consists of a "bare recitation of the *Monell* elements," and thus fails to meet the pleading standard announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Iqbal*, mere legal conclusions "are not entitled to the assumption of truth."

*Id.* at 678–79. Rather, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). We have held, however, that "we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*," "particularly in civil rights cases." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Construing Jackson's complaint liberally, Jackson has met the *Iqbal* standard if only because he has made a critical factual allegation that renders his complaint specific: that Barnes has admitted that he routinely deprived suspects of *Miranda* warnings as a "ploy" to elicit confessions. Thus, Jackson's contention that the Sheriff's Department knew or should have known about Barnes's unconstitutional conduct, is not merely possible, but plausible. Moreover, Jackson does not state without more that the Department's policies generally caused the violation at issue here: he states specifically that the violation is the result of the Department's "complete failure to supervise the practices of [its] deputies." These allegations are sufficiently particular to state a plausible claim of a policy of inaction under *Iqbal*.

## B.

Defendants also argue that the Sheriff's Department cannot be sued under § 1983 because it is a state actor. Although it is true that state actors are not subject to suit under § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and therefore cannot be sued under that statute), we have unequivocally held that when a California sheriff's department performs the function of conducting criminal

investigations, it is a county actor subject to suit under § 1983. *Brewster v. Shasta Cnty.*, 275 F.3d 803, 807–08 (9th Cir. 2001) (holding that a sheriff is a county actor when investigating crime); *Bishop Paiute Tribe v. Cnty. of Inyo*, 291 F.3d 549, 565–66 (9th Cir. 2002), *vacated on other grounds sub nom. Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003) (holding that a sheriff is a county actor when executing a search warrant); *see also Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1189 (9th Cir. 2002) (holding that a sheriff is a county actor when administering jails); *Streit v. Cnty. of L.A.*, 236 F.3d 552, 564–65 (9th Cir. 2001) (same).[4]

Defendants contend that *Brewster* is no longer good law in light of the California Supreme Court's later holding in *Venegas v. Cnty. of L.A.*, 87 P.3d 1 (Cal. 2004), that sheriffs are state actors when investigating crime, and therefore cannot be sued under § 1983 for their investigatory acts. *Venegas* does not control here, however. State case law aids but does not dictate our determination of whether an official (or, as here, an official entity) is a state or county actor for the purpose of § 1983:

> Though we must look at the relevant state law and state courts' characterizations of that law, the final determination [of whether an official or official entity is a state or county actor] under 42 U.S.C. § 1983 is a federal law

---

[4] These cases all involved suits against sheriffs acting in their official capacity rather than, as here, a suit against a sheriff's *department*. The two, however, are the same. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

statutory interpretation question; no deference is due to the ultimate conclusion of the California court that the provisions, taken as a whole, indicate the [official or official entity is] a state actor under Section 1983 for any particular function.

*Goldstein v. City of Long Beach*, 715 F.3d 750, 760–61 (9th Cir. 2013). In short, state case law is helpful to the extent that it aids in our understanding of various state constitutional and statutory provisions. Often, as here, some provisions suggest that the actor in question may be a state official, while others suggest that he may be a county official. Once these provisions have been construed by state courts, we must consider them as a whole, and determine under federal law whether an official is a state or county official. State case law does not control our decision; rather, the ultimate decision we must make is one of federal law. *See Brewster*, 275 F.3d at 806 (holding that, after analyzing "the state constitution, codes, and case law," the ultimate question of liability under § 1983 "is a question of federal law"); *Cortez*, 294 F.3d at 1189 ("[W]hile the determination of § 1983 liability is governed by federal law, we analyze state law to discern the official's actual function with respect to th[e] particular area or issue [in question]."); *Streit*, 236 F.3d at 564 ("[E]ven if the case were on all fours we would not be bound by [the California court's conclusion in *Peters*] regarding section 1983 liability because such questions implicate federal, not state, law.").

Considered in this context, *Venegas* does not displace our holding in *Brewster* that a California sheriff is a county official when investigating criminal activity. In *Venegas*, the California Supreme Court simply adopts the two previous

California decisions of *Pitts v. Cnty. of Kern*, 17 Cal. 4th 340 (1998), and *Cnty. of L.A. v. Superior Court*, 68 Cal. App. 4th 1166 (1998) (*Peters*). *Pitts* concerned whether district attorneys—not sheriffs—are state or county actors. 17 Cal. 4th at 362 (holding that district attorneys are state actors when preparing to prosecute and prosecuting crime, or when training staff and developing policy involving such matters). *Peters* held that California sheriffs are state actors with respect to their role in setting policies concerning the release of persons from the county jail. 68 Cal. App. 4th at 1178. The California Supreme Court concluded that the holding in *Peters* should be extended to a sheriff's actions in investigating crimes. *Venegas*, 87 P.3d at 11. In *Brewster*, however, we carefully analyzed *Pitts* and *Peters*, as well as the relevant California constitutional and statutory provisions, and held that a sheriff is a county official when investigating crime. *Brewster*, 275 F.3d at 807–12.

Ultimately, the *Venegas* court is clear that its disagreement with *Brewster* is with *Brewster*'s *conclusion* that the provisions that suggest that a California sheriff is a county official *outweigh* the provisions that suggest that a California sheriff is a state official. The *Venegas* court reaches the opposite conclusion. 87 P.3d at 9 (noting that *Pitts* and *Peters* found insufficient the same factors that we found sufficient in *Brewster* to establish that a sheriff is a county actor when investigating crime); *see also id.* at 10 (noting that *Pitts* and *Peters* found insufficient the same factors that we found sufficient in *Bishop* to establish that a sheriff is a county actor when obtaining and executing a search warrant). As Justice Werdegar notes in her concurring and dissenting opinion, the "disputed point" between *Brewster* and *Venegas* "is the relevance and weight, *under federal law*, to be given a particular aspect of state law

defining the relationship of California sheriffs to the state and county governments." *Id.* at 27. We are under no obligation, however, to "blindly accept [the California Supreme Court's] balancing of the different provisions of state law in determining liability under § 1983." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1029 (9th Cir. 2000). Rather, the proper balance of these various provisions is a question of federal law. *Goldstein*, 715 F.3d at 760–61. Because *Venegas* disagrees with *Brewster* on a matter of federal law, it does not constitute "an intervening decision on controlling state law" that would authorize, let alone require, us to overrule a prior decision. *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). Thus, we follow our decision in *Brewster*: a sheriff's department is a county actor when it investigates crime. Therefore, the Sheriff's Department is subject to suit under § 1983 for Jackson's claim that it violated his Fifth Amendment rights in the course of its investigative activities.[5]

---

[5] The overwhelming majority of district court decisions involving California sheriff's departments have continued to follow *Brewster* after *Venegas*. In fact, it appears that only three out of approximately thirty cases to have directly addressed this issue have followed *Venegas*. The three were all unpublished decisions in the Northern District of California, and a subsequent, published opinion in that district rejected their holdings. *See Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890, 902 (N.D. Cal. 2013). The views expressed in the Northern District's published opinion are uniformly joined by the courts of the Central, Eastern, and Southern Districts of California. *See Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1168 (E.D. Cal. 2013) ("This District has had numerous chances to retreat from [its position that *Brewster*, and not *Venegas*, controls] and has steadfastly maintained its adherence to *Brewster*, finding a sheriff is a local actor when investigating crime or running a jail."); *Smith v. Cnty. of L.A.*, 535 F. Supp. 2d 1033, 1038 (C.D. Cal. 2008) ("Because *Venegas* misapplied federal law, the Court declines to follow its holding and finds instead that Plaintiffs' claims are not barred

## C.

In conclusion, we hold that Jackson has properly pleaded a claim of *Monell* liability against the Sheriff's Department, and that the Sheriff's Department is subject to suit under § 1983 for its investigative activities. Therefore, we reverse the district court's dismissal of this claim.

## IV.

Jackson's final argument on appeal is that the district court erred in granting defendants judgment on the pleadings regarding his claim that Ventura County District Attorney Murphy and the Ventura County District Attorney's Office engaged in various illegal acts in prosecuting him. The district court rejected this claim on the grounds that Murphy has absolute prosecutorial immunity in her individual capacity and that the Ventura County District Attorney's Office has Eleventh Amendment immunity.

## A.

The district court is correct that much of Jackson's complaint focuses on activity for which Murphy is immune, and therefore that these claims must be dismissed. Specifically, Jackson focuses his complaint on Murphy's prosecutorial activity: her statements at trial, her closing argument, her use of DNA evidence, and her reliance on a

---

by the Eleventh Amendment. In so holding, the Court urges the California Supreme Court to reconsider *Venegas* to conform with the federal standard."); *see also Warner v. Cnty. of San Diego*, 2011 WL 662993, at *4 n.2 (S.D. Cal. 2011) (unpublished) (rejecting *Venegas* and following *Brewster*).

third-party's perjured testimony. Murphy is shielded from suit for such prosecutorial activity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009) (holding that absolute prosecutorial immunity applies to an individual's conduct relating to the initiation and conduct of a criminal trial). Thus, the district court was correct to dismiss these allegations.

Jackson asserts that his complaint also states that Murphy "systematically conspired" with Barnes in 1993, prior to Jackson's arrest on the murder charge, to unlawfully elicit a confession from him. His complaint does not clearly state this claim. Nevertheless, the district court erred in failing to give Jackson an opportunity to amend his complaint, as it is not "absolutely clear" that he could not cure its deficiencies by amendment. *See Robichaud v. Ronan*, 351 F.2d 533, 537 (9th Cir. 1965) (holding that prosecutors who, soon after arrest of suspect, allegedly directed police to coerce confession from suspect, were not entitled to absolute immunity because interrogation is ordinarily a police activity); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (holding that a pro se litigant must be given leave to amend his complaint if it appears at all possible that the plaintiff can correct the deficiencies in the complaint).

### B.

With respect to the Ventura County District Attorney's Office, Jackson alleges, in effect, that the District Attorney's Office is liable for Murphy's unlawful prosecutorial conduct. The District Attorney's Office, however, acts as a state office with regard to actions taken in its prosecutorial capacity, and is not subject to suit under § 1983. *Weiner*, 210 F.3d at 1030. Moreover, under the facts of this case, we cannot conceive of

any amendment that would allow Jackson to proceed against the District Attorney's Office. Therefore, we affirm the district court's dismissal of this claim.

## V.

In conclusion, we reverse the district court's rulings with respect to all three of Jackson's claims in whole or in part. Regarding Jackson's claim that Barnes violated his Fifth Amendment rights by interrogating him without giving him the requisite *Miranda* warnings, we hold that the claim is neither *Heck*-barred nor time-barred and that Jackson may be able to show that he is entitled to damages, if only nominal; we therefore reverse the district court's grant of summary judgment to Barnes. As to Jackson's claim that the Ventura County Sheriff's Department violated his Fifth Amendment rights by failing to supervise Barnes, we reverse the district court's judgment on the pleadings for the Sheriff's Department because Jackson has sufficiently pleaded a "policy of inaction" for which the Sheriff's Department, as a county actor, is subject to suit under § 1983. Finally, we affirm the district court's dismissal of Jackson's claim against the District Attorney's Office, but instruct it to grant Jackson leave to amend his complaint to state a claim against Murphy.

**REVERSED AND REMANDED.**