**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TED LOUIS BRADFORD,
　　　　　*Plaintiff-Appellant*,

　　　　　v.

JOSEPH SCHERSCHLIGT; CITY OF
YAKIMA,
　　　　　*Defendants-Appellees*.

No. 14-35651

D.C. No.
2:13-cv-03012-
TOR

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted
September 4, 2015—Seattle, Washington

Filed September 25, 2015

Before: John T. Noonan, Michael Daly Hawkins,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's dismissal of a civil rights action as time-barred and remanded for the district court to consider in the first instance whether defendant was entitled to qualified immunity.

In 1996, plaintiff was convicted and served a full ten-year sentence for residential burglary and rape. In 2008, the Washington State courts vacated his conviction based largely on newly-available DNA testing. Prosecutors retried plaintiff, which resulted in his acquittal in 2010. In 2013, plaintiff brought a 42 U.S.C. § 1983 action against a Yakima Police Department detective alleging the deliberate fabrication of evidence. The district court, determining that the running of the three-year statute of limitations began on the vacatur of plaintiff's conviction and not the date of his acquittal on retrial, found plaintiff's claim time-barred.

The panel held that plaintiff's claim did not accrue until he was acquitted of all charges on retrial. The panel concluded that plaintiff filed the underlying action within the three-year statute of limitations period, and it was error to dismiss his deliberate fabrication of evidence claim as time-barred. The panel declined to address the defendant's qualified immunity defense and remanded for the district court to consider it in the first instance.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Leonard J. Feldman (argued), Felix G. Luna, and Tomás A. Gahan, Peterson Wampold Rosato Luna Knopp, Seattle, Washington, for Plaintiff-Appellant.

Robert L. Christie (argued) and Jason M. Rosen, Christie Law Group, PLLC, Seattle, Washington, for Defendants-Appellees.

**OPINION**

HAWKINS, Circuit Judge:

Ted Bradford was convicted in 1996 of residential burglary and rape. In 2008, after Bradford served his full ten-year sentence, the Washington State courts vacated his conviction based largely on newly-available DNA testing, which excluded him as a contributor of genetic material found at the crime scene. Prosecutors then proceeded to retry Bradford, which resulted in his acquittal in 2010. In 2013, a few days before the three-year anniversary of that acquittal, but more than four years after his conviction was vacated, Bradford filed the underlying 42 U.S.C. § 1983 action against Yakima Police Department Detective Joseph Scherschligt, alleging the deliberate fabrication of evidence. The district court, determining that the running of the three-year statute of limitations began on the vacatur of Bradford's conviction and not the date of his acquittal, granted summary judgment in favor of Detective Scherschligt, finding that Bradford's claim was time-barred.

Because we conclude that Bradford's claim accrued when he was no longer subject to criminal charges, we reverse and remand.

## FACTUAL BACKGROUND

In 1996, the Yakima Police Department, led by Detective Scherschligt, investigated Bradford as a suspect in the burglary and rape of a Yakima resident, whom we, like the Washington State tribunals, will refer to as K.S.   In September 1995, a man, wearing a nylon stocking over his face, broke into K.S.'s home and raped her.  During the attack, the assailant forced K.S. to wear a mask, which had a piece of tape secured over the eye holes.

Detective Scherschligt took over the investigation and prepared an internal memorandum detailing suspect leads in October 1995.  The memo explained that a neighbor had "flushed a peeping Tom out of her back yard" in April of that year.  She also reported seeing a "white male driving a white smaller car several mornings" around that same time— approximately six months before K.S. was attacked.  Another resident observed a man matching the description K.S. had provided the police around the same time the suspect would have been fleeing the crime scene.  That resident and K.S. described the suspect as "really tall," muscular, and with long hair.  The report did not identify either neighbor by name.

Several months later, Bradford was arrested for a series of misdemeanors involving lewd conduct, which occurred in the area surrounding K.S.'s neighborhood.  The detective leading the investigation into the misdemeanors, Detective Light, informed Detective Scherschligt that Bradford might also be a suspect in the rape and burglary investigation.  Contrary to

K.S. and her neighbor's description of the rape suspect, Bradford was approximately 5' 7" tall, 210 pounds and had short hair.

Nevertheless, Detectives Scherschligt and Light visited Bradford while he was in custody for the misdemeanor charges and interrogated him about the rape and burglary. Bradford informed the detectives that he had an alibi for the day of the crime—he was at work during the time of the attack and was undergoing a medical procedure later that afternoon. The detectives continued their interrogation, and after many hours, Bradford confessed to the crime. But the details of his confession were inconsistent with many of the facts K.S. had reported.

After Bradford's confession, Detective Scherschligt returned to K.S.'s neighborhood to conduct further interviews. One of the women interviewed at that time was the same neighbor who earlier reported "flush[ing] the peeping Tom" from her yard. According to Detective Scherschligt's report and contrary to the neighbor's first statement, the neighbor now recalled seeing a man driving a small, white, two-door Toyota—the same car Bradford drove at the time—around the neighborhood on at least six different occasions and just weeks before K.S.'s attack. She even reported seeing that same man staring at K.S.'s house just days before the rape. Detective Scherschligt showed the neighbor a photo montage from which she identified Bradford.

In September 1996, Bradford was tried and convicted of first-degree rape and first-degree burglary and sentenced to 122 months in prison with credit for time served. After serving six years of his sentence, Bradford, with the help of

the Innocence Project Northwest, sought previously unavailable DNA testing on physical evidence collected from the crime scene. The physical evidence included the mask that the assailant had forced K.S. to wear, along with the tape, which contained genetic material from an unidentified male. The DNA testing revealed that Bradford was not a match to any of the samples found on the physical evidence, including the tape affixed to the mask. Later that year, Bradford was released from prison having served his full sentence, and he petitioned to have his conviction vacated.

Following a hearing, the Yakima County Superior Court concluded that the DNA evidence would likely have changed the outcome of Bradford's 1996 trial. The Washington Court of Appeals agreed, granted Bradford's petition, and vacated his conviction, specifically permitting the prosecution to pursue a new trial. *In re Bradford*, 165 P.3d 31, 32–35 (Wash. App. 2008). The court explained, "The factual disputes regarding Mr. Bradford's confession and alibi, like the other factual disputes noted by the parties, remain open questions for a jury to resolve upon retrial and in the context of the new DNA evidence." *Id*. at 35.

Bradford's conviction and sentence were formally vacated on August 1, 2008. The following month, Yakima County prosecutors filed an amended information elevating the charges against Bradford to aggravated rape and burglary, thereby increasing the likelihood that Bradford would be returned to prison if convicted. The retrial proceeded several months later, and on February 10, 2010, a Washington jury acquitted Bradford of all charges.

On February 7, 2013, just short of three years after his acquittal, Bradford filed the underlying action, asserting

claims that Detective Scherschligt deliberately fabricated inculpatory evidence.[1]   Detective Scherschligt moved for summary judgment on the grounds that Bradford's claim was barred by the statute of limitations and that he was entitled to qualified immunity.  The district court granted the motion on statute of limitations grounds, concluding that Bradford's claim accrued when his conviction was vacated on August 1, 2008.    The  district  court  did  not  reach  Detective Scherschligt's  alternative  argument  regarding  qualified immunity.  Bradford timely filed this appeal.[2]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's grant of summary judgment on statute  of  limitations  grounds.    *Tarabochia v. Adkins*, 766 F.3d 1115, 1120 (9th Cir. 2014).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, the court determines that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  *Id.*

---

[1] The operative complaint for purposes of this appeal is Bradford's third amended  complaint,  which  removed  allegations  that  Detective Scherschligt withheld material exculpatory evidence.  Bradford now argues that he only removed his claim based on the withholding of a sketch but maintained his claim based on the withholding of witness information.  On remand, we reopen the issue of whether Bradford has adequately pleaded a *Brady* claim, or whether he may again amend his complaint to do so.

[2] Bradford also brought negligence-based claims against the City of Yakima, and the district court granted judgment to the City on all claims. Bradford appeals the ruling only with regard to his §1983 claim against Detective Scherschligt.

## ANALYSIS

Before turning to the statute of limitations and qualified immunity issues before us, we provide a brief overview of the legal claim that Bradford asserts, as the elements of the claim are central to both inquiries. As Bradford explains, he is asserting a claim for deliberate fabrication of evidence, as recognized by this Court in *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). For ease of reference, we will refer to this as a *Devereaux* claim.

A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence. 236 F.3d at 1074–75. Fundamentally, the plaintiff must first point to evidence he contends the government deliberately fabricated. *See, e.g.*, *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1107 (9th Cir. 2010) (false statements in report and declaration); *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (false testimony at trial).

Then, there are two "circumstantial methods" of proving that the falsification was deliberate. *Costanich*, 627 F.3d at 1111. The first method is to demonstrate that the defendant continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent. *Devereaux*, 263 F.3d at 1076. The second method is to demonstrate that the defendant used "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Id.* These methods are not themselves independent causes of action. Rather, they are methods of

proving one element—intent—of a claim that the government deliberately fabricated the evidence at issue.

## I.  Statute of limitations.

As a matter of first impression, we must determine when a *Devereaux* claim accrues and starts the running of the limitations period.  Although Washington's three-year statute of limitations applies to Bradford's § 1983 claim, *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991), the Supreme Court has held that federal law determines the date of accrual, *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

At the outset, we address Bradford's contention that his claim would have been barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), had he filed it immediately upon vacatur of his conviction.  We disagree.  *Heck* established the now well-known rule that when an otherwise complete and present § 1983 cause of action would impugn an extant conviction, accrual is deferred until the conviction or sentence has been invalidated.  *Id.* at 487.  As the Supreme Court made clear in its decision in *Wallace*, however, *Heck* applies only when there is an extant conviction and is not implicated merely by the pendency of charges.  *Wallace*, 549 U.S. at 392–94.  Consequently, the resolution of this appeal hinges on traditional rules of accrual and not on the extension of *Heck* to retrial proceedings.

Turning then to the principles of accrual, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." *Wallace*, 549 U.S. at 388 (internal alterations and quotation marks omitted).  In other words, a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his cause

of action. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

We have recently considered the accrual date of § 1983 claims on two occasions. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 891 (9th Cir. 2014); *Jackson v. Barnes*, 749 F.3d 755, 760–61 (9th Cir. 2014). *Jackson* involved a plaintiff who succeeded in having his conviction and sentence vacated on the basis of a *Miranda* violation and immediately thereafter filed a § 1983 action. 749 F.3d at 758–59. While his § 1983 action was pending, the plaintiff was retried and convicted on the same charges. *Id.* at 759. The district court dismissed the § 1983 action, reasoning that it was barred both by *Heck*, in light of the plaintiff's second conviction, and by the applicable statute of limitations. *Id.* We reversed, holding that the plaintiff's claim would not impugn his second conviction because the order vacating his original conviction precluded the government from using the unlawfully-obtained statements in a second trial. *Id.* at 760–61. Therefore, the second trial was "entirely insulated from the *Miranda* violation associated with his initial conviction." *Id.* at 761. Further, the plaintiff's claim could not have accrued before his original conviction and sentence were vacated; therefore, it was timely. *Id.*

In *Rosales-Martinez*, we wrote "to clarify our law on when a released prisoner's cause of action for constitutional violations accrues, and when the statute of limitations begins to run." 753 F.3d at 891. Relying on *Jackson* and *Wallace*, we held that the plaintiff's § 1983 *Brady* claim "did not accrue until the Nevada court vacated [his] convictions on December 2, 2008." *Id.* at 896. The plaintiff's conviction was vacated in conjunction with a comprehensive plea agreement that resolved all outstanding charges against the

plaintiff. *Id.* at 893. The date the conviction was vacated thus also marked the date on which the plaintiff could no longer be prosecuted for the underlying charges. *See id.*

Here, Bradford alleges a violation of his due process rights based on the initiation of criminal charges that were based on allegedly fabricated evidence. The constitutional violation and resultant injury thus began on the date that the State brought charges against Bradford. Yet, unlike *Jackson*, in which the date of vacatur was the date on which the government could no longer use the unlawful evidence against the plaintiff, or *Rosales-Martinez*, in which the date of vacatur was also the date on which all charges were conclusively resolved, Bradford's conviction was vacated in a manner that specifically permitted the pursuit of the same charges against him based on the same evidence.[3] The inquiry here is therefore not as simple as merely identifying the onset date of injury. Indeed, the limitations period "on common-law torts do[es] not always begin on the date that a plaintiff knows or has reason to know of his injury." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1893 (2015).

To determine the proper date of accrual, we look to the common law tort most analogous to Bradford's claim. *See Wallace*, 549 U.S. at 388–89. As we have explained, the right at issue in a *Devereaux* claim is the right to "be free from [criminal] charges" based on a claim of deliberately fabricated evidence. *Devereaux*, 263 F.3d at 1075. In this regard, it is similar to the tort of malicious prosecution, which involves the right to be free from the use of legal process that

---

[3] Indeed, Detective Scherschligt's counsel stated at oral argument that detectives pursued no further investigation before Bradford's retrial.

is motivated by malice and unsupported by probable cause. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

In a recent case, the Fourth Circuit provided a helpful analysis of the accrual rules for malicious prosecution claims. *Owens*, 767 F.3d at 379. There, the Fourth Circuit was tasked with determining when a certain *Brady*-based § 1983 claim had accrued. *Id.* at 388–92. The court first recognized that under *Wallace*, a court evaluates the proper accrual date for a claim by identifying the common law analogue for the § 1983 claim and applying any "distinctive" accrual rules associated with that common law analogue. *Id.* at 389–92. Likening it to a malicious prosecution claim, the court held that the § 1983 claim had accrued when prosecutors entered a *nolle prosequi* rather than the date on which the court had originally granted the plaintiff a new trial. *Id.* at 392. The court noted that a malicious prosecution claim does not accrue until the proceedings against the plaintiff have "terminated 'in such manner that [they] cannot be revived.'" *Id.* at 390 (citing W. Page Keeton, et al., *Prosser & Keeton on Torts* § 119 (5th ed. 1984)). We find this reasoning persuasive.

Setting the accrual date for Bradford's *Devereaux* claim as the date of acquittal is logical. If Bradford's original 1996 trial had resulted in an acquittal, his *Devereaux* claim would have accrued on the date the charges against him were dismissed. *See Walker v. Jastemski*, 159 F.3d 117, 119 (2d Cir. 1998) (claim based on officers' conspiracy to fabricate evidence accrued when charges dismissed); *cf. Johnson v. Dossey*, 515 F.3d 778, 781 (7th Cir. 2008) (*Brady*-like § 1983 claim accrued on date of acquittal). The analysis is the same in the retrial setting where, as here, the government pursues

the same charges based on the same evidence after the vacatur of the original conviction.

In this instance, setting the triggering date for the onset of the limitations period as the date of acquittal also makes practical sense. Had Bradford brought his claims immediately after his conviction was vacated, Detective Scherschligt would almost certainly have moved to stay proceedings on the grounds that a retrial was imminent and that a conviction would produce a *Heck* bar against Bradford's claims.[4] Thus, Detective Scherschligt would not only not be prejudiced by a delay in reaching the merits, he might well have benefitted from it.

We recognize, however, that the result may be different under other factual circumstances. For example, a similar claim could accrue upon vacatur of a conviction if the conviction was set aside in a manner precluding the government from maintaining charges on evidence presented at the initial trial. *See Jackson*, 749 F.3d at 760–61. But in this case, Bradford remained subject to the very same charges based on the same evidence, which forms the basis of his claim, until his February 10, 2010, acquittal. His claim seeking to vindicate his right to be free from those criminal charges based on the allegedly fabricated evidence did not accrue until the charges were fully and finally resolved and could no longer be brought against him.[5]

---

[4] Again, Detective Scherschligt's counsel acknowledged as much at oral argument.

[5] For the first time on appeal, Detective Scherschligt argues that Bradford's claim is untimely even if it accrued on the date of his acquittal. Scherschligt argues that this is so because Bradford raised his deliberate

We therefore conclude that Bradford filed the underlying action within the three-year statute of limitations period, and it was error to dismiss his deliberate fabrication of evidence claim as time-barred.

## II. Qualified Immunity.

Detective Scherschligt asks us to affirm, in the alternative, on the basis that he is entitled to qualified immunity. Although he raised his qualified immunity defense in his motion for summary judgment, he limited his arguments to a claim based on allegations that Bradford's confession was coerced. The district court did not reach the issue of qualified immunity, and Bradford confirmed at argument that he is no longer pursuing a claim based on his own confession. We therefore decline to address Detective Scherschligt's qualified immunity defense, and remand for the district court to consider it in the first instance.

---

fabrication of evidence claim in his third amended complaint filed on September 26, 2013. Even if Detective Scherschligt had not waived this argument by failing to raise it below, *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015), we would reject it. Bradford's *Devereaux* claim is based on the same factual allegations set forth in the original complaint, and at best, is a new legal theory predicated on the precise transactions and occurrences set out in the complaint that Bradford filed on February 7, 2013. Consequently, his claim relates back to that filing date, and is timely. *See* Fed. R. Civ. P. 15(c)(1)(B); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982) (holding that fraud claim related back to original complaint that asserted antitrust violation based on same ICC protests).

## CONCLUSION

We hold today that Bradford's claim did not accrue until he was acquitted of all charges on February 10, 2010. Therefore, it was error to dismiss his claim as time- barred, and we reverse. We remand for the district court to consider in the first instance whether Detective Scherschligt is entitled to qualified immunity under the circumstances.

**REVERSED AND REMANDED**