**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 5 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAFAEL BENITEZ, | No. 17-55107 |
| Plaintiff-Appellant, | D.C. No. 8:12-cv-00550-AG-JC |
| v. | |
| SANDRA HUTCHENS, in her individual capacity, and DON BARNES, in his official capacity as Sheriff-Coroner of Orange County, | MEMORANDUM* |
| Defendant-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Submitted May 14, 2020**
Pasadena, California

Before: EBEL,*** WARDLAW, and OWENS, Circuit Judges.

Rafael Benitez appeals the district court's dismissal of his Third Amended

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*        The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

Complaint (TAC) alleging violations of 42 U.S.C. § 1983 by Sarah Hutchens, Sheriff-Coroner of Orange County, in her official and individual capacity.[1] We review de novo the grant of a motion to dismiss, "accept[ing] as true all well-pleaded factual allegations[] and constru[ing] all factual inferences in the light most favorable to the plaintiff." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020). We reverse.

1. Benitez's TAC plausibly alleges that his federal rights were violated throughout his five-year confinement in Orange County Jail. *See King v. Cty. of Los Angeles*, 885 F.3d 548, 556 (9th Cir. 2018) ("To establish a claim under § 1983, [Benitez] must show the violation of a federal right by a person acting under color of state law." (citing *West v. Atkins*, 487 U.S. 42, 48 (1988))).

"Under the Due Process Clause of the Fourteenth Amendment, 'an individual detained under civil process . . . cannot be subjected to conditions that amount to punishment.'" *King*, 885 F.3d at 556–57 (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)). Because Benitez was housed in the same unit and treated the same as a criminal detainee from 2008 to May 2012, his conditions were "identical to . . . those in which [his] criminal counterparts [were] held." *Id.* at 557 (internal quotation marks and citation omitted). His conditions during this

---

[1] During the pendency of this appeal, Don Barnes succeeded Hutchens as Sheriff of Orange County, and has therefore replaced Hutchens in her official capacity in this lawsuit.

2

four-year period were therefore unconstitutionally punitive. *Id.*

In May 2012, Orange County released a "completely new addition" to its Jail Operations Manual, which detailed new policies for detaining civil detainees, including that civil detainees would be held separately from criminal detainees. Pursuant to these policies, Benitez was moved to a separate wing of the jail that housed only civil detainees. Even so, Benitez has plausibly alleged that his conditions of confinement during this period were unconstitutionally punitive because they were "substantially worse than [those he] would face upon commitment [to Coalinga State Hospital]." *Jones*, 393 F.3d at 933 (internal quotation marks and citation omitted). In *King*, we took judicial notice of the following facts to describe the conditions of confinement at Coalinga State Hospital:

> [Sexually Violent Predators] at Coalinga are treated as "patients" by a staff that includes "psychologists, psychiatrists, social workers, rehabilitation therapists, registered nurses, psychiatric technicians, and other medical and clinical staff." Coalinga Website at *Home*. Patients live in dorms, not cells. Coalinga Website at *Facilities*. Patients may make and receive calls using the public telephone in their unit, and the phone numbers for these units are posted online. Coalinga Website at *Family and Friend Resources, Visitor Information*. As part of their treatment, patients are encouraged to have visits from friends and family members. Coalinga Website at *Visitor Information*. Patients may hug and kiss their visitors at the beginning and end of each visit, and may hold hands during visits. *Id.* Patients can receive packages from family members and vendors, and can possess "personal items" such as shoes and caps. Coalinga Website at *Family and Friend Resources, Statewide Contraband List*.

3

885 F.3d at 555.

By contrast, Orange County's new Jail Operations Manual required that Benitez be held in conditions of confinement markedly worse from those at Coalinga. Benitez was held in a cell, not a dorm. He was prohibited from receiving packages from family members or vendors, and was barred from having such personal items as a cap. Because the Jail Operations Manual required Benitez to be held in conditions of confinement that are unconstitutionally punitive as measured along the dimensions we set out in *King*, he has also plausibly alleged the violation of his federal rights from May 2012 until the date he was transferred to Coalinga.

2. To state a claim under § 1983 against Orange County or Sheriff Barnes in his official capacity, Benitez must allege both a violation of his federal rights and facts to "show that a county policy or custom caused his injury." *King*, 885 F.3d at 556.[2]

Construing Benitez's pro se TAC liberally, *see Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014), he has plausibly alleged that from 2008 to May 2012

---

[2] "When a county official like Sheriff [Barnes] is sued in his official capacity, the claims against him are claims against the county." *Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016). Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

4

Orange County Jail had an unwritten policy or custom that required him to be detained in unconstitutionally punitive conditions of confinement, *see Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (defining custom).

From 2008 to May 2012, Benitez claims that Office of Independent Review staff and other Orange County Jail staff told him directly that he was being housed "in accordance with [Hutchens's] policies as outlined within the [Jail Operations Manual]." He also alleges that Hutchens's deputies told him that there was no separate unit at the jail to house civil detainees. Furthermore, Benitez alleges that in 2011 he met another civil detainee who was also repeatedly told by Hutchens's deputies that he would not be housed separately from criminal detainees. Taken together, this evidence plausibly alleges that from 2008 to May 2012 it was standard operating procedure at Orange County Jail to house civil detainees like Benitez in the same conditions as criminal detainees, in violation of the civil detainees' federal rights. *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (referring to a custom as "standard operating procedure" (internal quotation marks and citations omitted)).

From May 2012 onwards, Benitez has plausibly alleged a claim against Barnes because Benitez was held pursuant to the County's policies as detailed in the Jail

5

Operations Manual, and, as explained above, these policies were constitutionally deficient.

3. For the first time on appeal, Hutchens argues that the district court lacked personal jurisdiction over her in her individual capacity. However, Hutchens's motion to dismiss before the district court only briefly noted in a footnote that she had not yet been served in her individual capacity and thus was appearing only in her official capacity. Notably, she did not move to dismiss at that time under Federal Rule of Civil Procedure 4 for failure to serve or move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Because "arguments not raised in the district court will not be considered for the first time on appeal," *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014), she has waived any claim of defective service, *see Smith v. Idaho*, 392 F.3d 350, 355 (9th Cir. 2004) ("[I]t is well-recognized that personal jurisdiction—unlike subject-matter jurisdiction—may be waived." (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982))).

4. To overcome Hutchens's motion to dismiss the individual-capacity claims, Benitez's complaint must "plausibly allege[] that: (1) [Hutchens] promulgate[d], implement[ed], or in some other way possesse[d] responsibility for the continued operation of the . . . policy" regarding his conditions of confinement, and (2) that "the [constitutional] violation . . . occurred pursuant to that policy." *OSU Student*

6

*All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) (internal quotation marks omitted). Benitez has done so.

Benitez's TAC claims that, from 2008 till May 2012, Hutchens's own deputies told him that they were acting "in accordance with *Defendant's* policies." (emphasis added). Because Hutchens "possesse[d] responsibility for the continued operation" of these policies, and these policies required unconstitutionally punitive conditions of confinement, Benitez has plausibly alleged that the constitutional violations at issue in this case "occurred pursuant to [Hutchens's] policy." *Id.*

Furthermore, the revised Jail Operations Manual issued in 2012 was published in Hutchens's name and on her letterhead. Therefore, Benitez has plausibly alleged that Hutchens "promulgate[d], implement[ed], or in some other way possesse[d] responsibility for the continued operation of the" Jail Operations Manual policies that caused Benitez's constitutional injury. *Id.*

**REVERSED; REMANDED for further proceedings.**